**Ted ROBERTSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–03–00633–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 30, 2004.

Discretionary Review Refused
June 15, 2005.

Sandy Melamed, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, and Amanda J. Peters, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Ted Robertson, guilty of violating a protective order.[1] After finding two enhancements true, the jury assessed appellant's punishment at 25 years' confinement. In four points of error, appellant argues that the evidence is legally and factually insufficient to support his conviction because the State did not establish that he (1) threatened the complainant with imminent bodily injury and (2) used or exhibited a deadly weapon. We affirm.

## Background

Appellant and the complainant had been married for 19 years when they divorced in 1997. The marriage produced two sons. After the divorce, in 2001, the complainant obtained a protective order against appellant. The protective order forbade appellant from: (1) committing family violence against the complainant; (2) threatening or harassing the complainant directly or through another person; (3) going near or to the complainant's home or office; and (4) engaging in conduct that would be likely to harass, abuse, annoy, alarm, torment, or embarrass the complainant. The protective order warned appellant that a violation could result in a fine, confinement in jail, or both.

The complainant testified that, in March 2002, Tracey Robertson, appellant's and the complainant's youngest son, telephoned his father to tell him about an argument he had with his basketball coach. Appellant went to the complainant's home, where Tracey was living. Appellant announced his arrival by yelling and beating on the front door. The complainant opened her front door, but kept her burglar bar door, which had fairly large gaps in between the bars, closed. Appellant, who had a box-cutter knife in his hand, yelled obscenities and ordered the complainant to come outside. The complainant was afraid and refused; she told him to leave or she would call the police. Appellant told her that he would "get her" and that he was coming back. Eventually, the complainant closed the front door and appellant left. Tracey Robertson testified that he saw his parents argue, but did not see a knife.

The complainant called the police after appellant left. The Houston police officer who responded to her call testified that the complainant's eyes were wet, and that she seemed very nervous, upset, and afraid. He testified that she spoke with a shaky voice when she told him what appellant had done.

## Standard of Review

### Legal Sufficiency

We review the legal sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict to determine whether any rational fact finder

---

1. TEX. PEN.CODE ANN. § 25.07(a)(1) (Vernon Supp.2004–2005). If the order is violated by committing an assault, the offense is a felony. TEX. PEN.CODE ANN. § 25.07(g) (Vernon Supp. 2004–2005).

could have found the essential elements of the crime beyond a reasonable doubt. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000); *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the fact finder. *King,* 29 S.W.3d at 562.

### Factual Sufficiency

We begin the factual sufficiency review with the presumption that the evidence supporting the jury's verdict is legally sufficient. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App.2004) (citing *Zuniga v. State,* 144 S.W.3d 477, 481 (Tex.Crim.App.2004)). Our evaluation may not intrude upon the fact finder's role as the sole judge of the weight and credibility accorded any witness's testimony. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). What weight to be given contradictory testimonial evidence is within the sole province of the fact finder because it turns on an evaluation of credibility and demeanor; the fact finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407–08. We must defer appropriately to the fact finder to avoid substituting our judgment for its judgment. *Zuniga,* 144 S.W.3d at 481–82.

### Discussion

### Imminent Bodily Injury

In his first and second points of error, appellant contends the State failed to prove, as a matter of law or fact, that he threatened the complainant with imminent bodily injury.

A protective order is violated if a person knowingly or intentionally commits an act of family violence. TEX. PEN.CODE ANN. § 25.07(a)(1). Family violence means "an act by a member of a family ... against another member of the family ... that is intended to result in ... bodily injury, assault, or ... that is a threat that reasonably places a member in fear of imminent ... bodily injury." TEX. FAMILY CODE ANN. § 71.004 (Vernon 2002). Appellant contends his threat was conditioned on a future event; that is, the complainant would only be harmed if she came outside of her house. He argues, therefore, that, under *Devine v. State,* 786 S.W.2d 268, 270 (Tex. Crim.App.1989), his actions did not constitute a threat of imminent bodily injury. We disagree.

■ "Imminent" means "near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." *Devine,* 786 S.W.2d at 270 (citing BLACK'S LAW DICTIONARY 676 (rev. 5th ed.1979)). As in *Devine,* we construe the term "imminent" to refer to a present threat, not a future threat of bodily injury or death. *See Devine,* 786 S.W.2d at 270 (defining "imminent" bodily injury with respect to § 29.02(a)(2) of the Texas Penal Code). The Court of Criminal Appeals relied on this definition in *Devine* to find that Devine did not threaten the complainant with imminent bodily injury when she said that she would have him killed sometime in the future if he did not give her money. *Id.* The court explained that there was nothing in the record to show that Devine had "acted in such a way as to place [the complainant] in fear of imminent harm" because Devine did not tell Cox that she was carrying a weapon, nor did she

make threatening movements towards Cox. *Id.* at 271.

Citing *Green v. State,* 567 S.W.2d 211 (Tex.Crim.App.1978), the *Devine* Court distinguished between a conditional and a future threat. *See Devine,* 786 S.W.2d at 270–71. In *Green,* the defendant had told the complainant to give him money or he would cave his head in. *Green,* 567 S.W.2d at 212. The *Devine* Court held that Green's threat was a conditional threat of imminent bodily injury, unlike Devine's threat of bodily injury to occur sometime in the future; proof of the conditional threat, unlike proof of a future threat, satisfied the standard of proof of imminent bodily injury. *See Devine,* 786 S.W.2d at 271.

*Legal Sufficiency*

■ Here, the evidence presented at trial showed that appellant went to the complainant's house and announced his presence by banging on the door and yelling. The complainant opened the door, but kept the burglar bars closed. Appellant took a box-cutter knife out of his pocket and ordered the complainant to come outside. Appellant told her that he would "get her" and that he was coming back. The complainant told him to leave or she would call the police. She testified that she was afraid of appellant, even though the burglar bars were closed. She was afraid appellant would return. She explained that appellant had, on several prior occasions, told her he did not care about the protective order.

We conclude that appellant's threat was not a future threat of bodily injury but was a present threat of imminent bodily injury. Displaying the box-cutter knife was an overt, threatening act. In addition, appellant stated that he would "get her" and that he was coming back. While burglar bars separated appellant from the complainant, it is possible that he could have injured her by striking her between the bars or by waiting for her to leave her home. Appellant told the complainant that he would return, and she believed him.

We conclude that this evidence was sufficient for the jury to conclude beyond a reasonable doubt that appellant threatened the complainant with imminent bodily injury. The evidence was thus legally sufficient.

*Factual Sufficiency*

The only contradictory evidence presented was the testimony of Tracey Robertson, the complainant's and appellant's son. Tracey testified that he saw his parents argue, but he did not see appellant with a knife. He also testified that he did not hear appellant threaten the complainant. On cross-examination, Tracey testified that he did not want his father to go to prison. He stated he did not recall speaking to a police officer after the encounter between his parents. He also did not remember telling the police officer that his father kicked the front door; or that his father pulled a knife out of his pocket and told his mother that he was going to get her; and he testified that he did not see the knife.

■ A jury has the sole province of deciding what weight to give contradictory testimony because its decision turns on the evaluation of demeanor and credibility. *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex. Crim.App.1997). A jury's verdict is not manifestly unjust when it resolves conflicting views in favor of the State. *Id.* at 410. It is clear by the verdict that the jury chose to give more weight to the complainant's testimony. After examining all of the evidence neutrally, we hold that the proof of guilt was not so obviously weak as to undermine confidence in the jury's determination; nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met. The evidence was thus factually sufficient to show that appellant threatened

the complainant with imminent bodily injury.

We overrule appellant's first and second points of error.

### Deadly Weapon

In his third and fourth points of error, appellant contends the evidence was legally and factually insufficient to support his conviction because the State did not prove that the box-cutter knife[2] was a deadly weapon as defined by law. The State responds that proof that appellant threatened the complainant with imminent bodily injury with a knife is enough to prove a violation of section 25.07 of the Texas Penal Code, the crime with which appellant was charged, without proof that the knife was a deadly weapon. Thus, any variance between the proof and the indictment—which stated that appellant, "did there and then unlawfully intentionally and knowingly violate a protective order ... by committing the offense of assault of [the complainant], with imminent bodily injury by threatening [her] with a deadly weapon, namely, A KNIFE"—was immaterial.

When there is a discrepancy between the evidence presented at trial and the language in the charging instrument, a variance exists. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex.Crim.App.2001). If an appellant's due process rights are violated, the variance is fatal and the evidence is insufficient. *Id.* at 257. However, if the variance does not surprise the appellant or prejudice his substantial rights, the variance is immaterial and does not impact his conviction. *Id.* at 248. An appellant's substantial rights are prejudiced if the charging instrument does not inform him sufficiently to allow him to develop an adequate defense. *Id.* An appellant's rights are also substantially prejudiced if,

under a differently worded charging instrument, he could be prosecuted for the same offense at a later time. *Id.* at 248–49.

A variance between the wording of an indictment and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted for the same crime .... we hold that when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a "material" variance will render the evidence insufficient. Thus, the hypothetically correct charge will take into consideration the fatal variance doctrine.... Allegation[s] giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included.

*Gollihar*, 46 S.W.3d at 257 (footnotes omitted).

Appellant was charged with unlawfully, intentionally and knowingly violating a protective order by "committing the offense of assault of [the complainant], namely, by intentionally or knowingly threatening [the complainant] with imminent bodily injury by threatening [the complainant] with a deadly weapon, namely, A KNIFE." A person commits assault when he "intentionally or knowingly threatens another with imminent bodily injury." TEX. PEN.CODE ANN. § 22.01(a)(2)

---

**2.** Webster's Dictionary defines a box cutter as "a small cutting tool that is designed for opening cardboard boxes and typically con-

sists of a retractable razor blade in a thin metal sheath." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 148 (11th ed.2003).

(Vernon 2003). A deadly weapon is not a statutory element for violating a protective order or committing an assault. *See id.;* TEX. PEN.CODE ANN. § 25.07(a)(1). As discussed above, we have found the evidence is legally and factually sufficient to show that appellant threatened the complainant with imminent bodily injury with a box-cutter knife.

We conclude that the indictment sufficiently informed appellant of the charge against him to allow him to prepare an adequate defense and that he was not put at risk of being prosecuted later for the same crime by the inclusion of the words "a deadly weapon" in the indictment. Therefore, allegation of the words "a deadly weapon" in the indictment, which words were omitted from the jury charge, did not give rise to a material variance. Because it was unnecessary for the State to prove the box-cutter knife was a deadly weapon, appellant's claims of insufficient evidence are without merit.

We overrule appellant's third and fourth points of error.

We affirm.