IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00003-CR

 

Robert Schmidt, Jr.,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 87th District Court

Freestone County, Texas

Trial Court No. 06-066-CR

 



MEMORANDUM  Opinion



 








            A jury convicted Robert Schmidt, Jr.
of aggravated assault of a public servant and found that he had used a deadly
weapon, a knife, in the commission of the offense.  The jury found enhancement
allegations true and assessed Schmidt’s punishment at twenty-five years’
imprisonment.  Schmidt contends in two issues that the evidence is legally and
factually insufficient to prove that he threatened the complainant with
imminent bodily injury or that the knife was a deadly weapon.  We will affirm.

 

Background

            The indictment alleges in pertinent
part that Schmidt “threaten[ed] Josh Vercher with imminent bodily injury by
charging at the said Josh Vercher with a knife, and did then and there use or
exhibit a deadly weapon, to-wit: a knife, during the commission of said
assault.”

            Officer Vercher testified that he and
several other officers responded to a domestic disturbance call at the home of Schmidt’s
parents on the afternoon in question.  When they arrived, Schmidt had already
left on foot.  Vercher found him not too far away leaning against a dumpster. 
After they made eye contact, Vercher noticed Schmidt “reach in his back pocket
and make a furtive move like he—like he was popping open a knife.”  Vercher
radioed this information to the other officers and pulled over to make contact
with Schmidt.

            Schmidt started walking in Vercher’s
direction.  As Vercher got out of the car, Schmidt came around the corner of a
building about “[t]wenty, 21 foot” away.  He was holding a Maglite flashlight
in his right hand “like he was going to use it as a club,” and his left hand
was behind his back.  Vercher ordered Schmidt to get on the ground, but he
continued walking toward the officer.  Vercher repeated the command, but
Schmidt continued walking.  Vercher repeated the command a third time and drew
his service weapon.  Other officers had joined Vercher by this time and were
shouting similar commands.

            Schmidt displayed a knife, pointed it
in Vercher’s direction, said “[l]et’s get this shit over,” and charged the
officer.  As Vercher was about to shoot Schmidt, another officer to one side
fired a Taser at Schmidt but hit him with only one of the two prongs necessary
to create the electrical impulse which disables the intended target.  Schmidt was
about ten feet away from Vercher at this point.  After the ineffective Taser
shot, Schmidt turned and fled.

            Vercher testified that he thought
Schmidt was going to hurt him.  He felt “very threatened” and was “scared for
[his] life.”  He stated that he considered the knife to be a deadly weapon and
that it was capable of causing death or serious bodily injury.  He perceived
the flashlight as a threat and testified that it too could have caused bodily
injury.  Based on Schmidt’s actions, he believed bodily injury to himself was
imminent.

            Officer Kenneth Russell likewise
testified that he considered the knife a deadly weapon and that it was capable
of causing death or serious bodily injury.  Russell perceived Schmidt as a
threat and felt that Schmidt could have injured him.  Russell too drew his service
weapon.  When the prosecutor asked if Russell had his finger on the trigger, he
answered that he did not:

‘Cause once—once you trigger that gun, you know,
it’s going to go off, and then—then that’s that—that many seconds went by, and
the distance that I had between him and me, that threat wasn’t as  .  .  .  you
know what I mean?

 

Applicable Law

             In reviewing a claim of legal
insufficiency, we view all of the evidence in a light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential element beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Sells v. State, 121 S.W.3d
748, 753-54 (Tex. Crim. App. 2003); Witt v. State, 237 S.W.3d 394,
396-97 (Tex. App.—Waco 2007, pet. ref’d).

            In a factual insufficiency review, we
ask whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder's verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Witt, 237 S.W.3d at 397.

            Schmidt was indicted for violation of
sections 22.01(a)(2) and 22.02(a)(2) and (b)(2)(B) of the Penal Code.  Section
22.01(a)(2) provides in pertinent part that a person commits an assault if he “intentionally
or knowingly threatens another with imminent bodily injury.”  Tex. Pen. Code Ann. § 22.01(a)(2) (Vernon Supp. 2007).  Section 22.02(a)(2) elevates simple assault to an aggravated offense
when the person “uses or exhibits a deadly weapon during the commission of the
assault.”  Id. §
22.02(a)(2) (Vernon Supp. 2007).  And section 22.02(b)(2)(B) elevates the
offense to a first degree felony when the assault is committed against a public
servant lawfully discharging an official duty.  Id. § 22.02(b)(2)(B) (Vernon Supp. 2007).  We will begin with the deadly weapon component of Schmidt’s appellate
complaints.

Deadly Weapon

            A deadly weapon is defined by statute
as “(A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; or (B) anything that in
the manner of its use or intended use is capable of causing death or serious
bodily injury.”  Id. § 1.07(a)(17) (Vernon Supp. 2007).  Knives are not
generally considered deadly weapons by design under subsection (A), and neither
party contends that the knife in the present case would qualify as a deadly
weapon under this definition.  See Robertson v. State, 163 S.W.3d 730,
732 (Tex. Crim. App. 2005); Nickerson v. State, 69 S.W.3d 661, 670 (Tex.
App.—Waco 2002, pet. ref’d).  Therefore, the issue is whether there is legally
and factually sufficient evidence to find that the knife in the manner of its
use was capable of causing death or serious bodily injury.  See Tex. Pen. Code Ann. § 1.07(a)(17)(B); Nickerson,
69 S.W.3d at 670.

            Courts have employed several factors
when considering whether a knife is a deadly weapon under this definition,
including: (1) the size, shape, and sharpness of the knife; (2) the manner in
which the appellant used the weapon; (3) the nature or existence of inflicted
wounds; (4) testimony of the knife’s life-threatening capabilities; (5) the
physical proximity between the victim and the knife; and (6) the words spoken
by the appellant.  See Thomas v. State, 821 S.W.2d 616, 619 (Tex. Crim. App.
1991); Lowe v. State, 211 S.W.3d 821, 828 (Tex. App.—Texarkana 2006,
pet. ref’d); Nickerson, 69 S.W.3d at 670.  “No one factor is
determinative, and the fact finder must examine each case on all of its facts
to determine whether the knife is a deadly weapon.”  Tucker v. State,
221 S.W.3d 780, 784 (Tex. App.—Corpus Christi 2007, pet. granted) (citing Garcia
v. State, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d)).

            Schmidt acknowledges in his brief that
“[n]o one factor is determinative” but later states “the distance between Mr.
Schmidt and Officer Vercher is the critical evidentiary factor.”  According to
Schmidt, “[A]t ten feet, it seems improbable, if not impossible, that Mr.
Schmidt used the knife in a ‘deadly’ fashion.”

            The knife was admitted in evidence for
the jury to see, and we have ourselves examined the knife to ascertain its
size, shape, and sharpness because the State did not admit in evidence a
photograph of the knife or any testimony describing the physical
characteristics of the knife.  See Tex.
R. App. P. 34.6(g)(2); Robertson, 163 S.W.3d at 734.  The knife
is a folding knife with a non-serrated blade approximately three inches long. 
The knife has a liner lock to hold the blade in place when open.  One-half of
the handle on one side of the knife is broken off.

            Concerning the other factors, the
evidence, when viewed in the light most favorable to the verdict, is that: (1) Schmidt
was brandishing the knife in a threatening manner while simultaneously wielding
the flashlight like a club; (2) Vercher and Russell both testified that the
knife was capable of causing death or serious bodily injury; (3) Schmidt was
charging toward Vercher in a threatening manner; and (4) Schmidt threatened
Vercher when he said, “Let’s get this shit over.”

            We hold that this evidence is legally
sufficient to prove that Schmidt’s knife was a deadly weapon.  See Billey v.
State, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref’d) (evidence
sufficient if knife is “displayed in a manner conveying an express or implied
threat that serious bodily injury or death will be inflicted if the desire of
the person displaying the knife is not satisfied”); Jones v. State, 843
S.W.2d 92, 96-97 (Tex. App.—Dallas 1992, pet. ref’d) (same); accord In re
D.L., 160 S.W.3d 155, 166-67 (Tex. App.—Tyler 2005, no pet.).

            With regard to the factual sufficiency
of the evidence, Schmidt focuses on discrepancies between Vercher’s testimony
and his offense report regarding the relevant events, the distance between
Schmidt and Vercher, and the differing reasonable inferences which could be
drawn from Schmidt’s words and actions.  However, these issues all go to weight
and credibility determinations, and we must defer to the jury in these
matters.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Gibson
v. State, 233 S.W.3d 447, 452 (Tex. App.—Waco 2007, no pet.).

            From a neutral review of all the
evidence, we cannot say that the evidence supporting the deadly-weapon finding
is so weak or that the conflicting evidence is so strong as to render the jury’s
verdict clearly wrong and manifestly unjust.  See Watson, 204 S.W.3d at
414-15; Witt, 237 S.W.3d at 397.  Accordingly, we hold that the evidence
is factually sufficient to prove that Schmidt’s knife was a deadly weapon.

Imminent Threat

            Schmidt also challenges the legal and
factual sufficiency of the evidence to support the jury’s finding that he threatened
Schmidt with imminent bodily injury.  See Tex. Pen. Code Ann. § 22.01(a)(2).  Schmidt views Officer
Russell’s testimony as evidence that “the threat was not imminent” in addition
to focusing on the distance between Schmidt and Vercher.

            The Court of Criminal Appeals has defined
“threaten” in part as meaning “a menacing indication of (something dangerous,
evil, etc.); as the clouds threaten rain or a storm.”  Olivas v. State,
203 S.W.3d 341, 345 (Tex. Crim. App. 2006) (quoting Webster’s New Twentieth Century Dictionary Of The English Language
Unabridged 1901 (2d ed.1983)).  A person commits the requisite
threatening conduct “not only when the actor actually causes fear in another,
but also (1) when he creates an unacceptable risk that another may be placed in
fear, and (2) when he increases the likelihood that he will carry through on a
threat and cause a physical injury.”  Id. at 347.

            The Court has defined the term
“imminent” as meaning “near at hand; mediate rather than immediate; close
rather than touching; impending; on the point of happening;  threatening; 
menacing;  perilous.”  Devine v. State, 786 S.W.2d 268, 270 (Tex. Crim. App.
1989) (quoting Black's Law Dictionary
676 (rev. 5th ed. 1979)); Robertson v. State, 175 S.W.3d 359, 362 (Tex.
App.—Houston [1st Dist.] 2004, pet. ref’d); In re S.B., 117 S.W.3d 443,
450 (Tex. App.—Fort Worth 2003, no pet.).  The term refers to a present threat
of bodily injury rather than a future threat.  Devine, 786 S.W.2d at
270; Robertson, 175 S.W.3d at 362.

            Here, viewed in the light most
favorable to the verdict, the evidence is that Schmidt charged at Vercher
brandishing a knife and a flashlight in a threatening manner.  This constitutes
legally sufficient evidence to prove that Schmidt threatened Vercher with
imminent bodily injury.  See Adams v. State, 222 S.W.3d 37, 51 (Tex. App.—Austin
2005, pet. ref’d); Tidwell v. State, 187 S.W.3d 771, 775 (Tex. App.—Texarkana 2006, pet. struck); Robertson, 175 S.W.3d at 363.

            Regarding the factual sufficiency of
the evidence, Schmidt’s focus on Russell’s testimony is misguided.  Russell
testified that he did not put his finger on the trigger of his service weapon
because he did not perceive Schmidt to pose a threat of imminent harm to
Russell.  He did not testify about whether Schmidt posed a threat to Vercher,
other than to say that the knife was capable of causing death or serious bodily
injury.  The remainder of Schmidt’s factual sufficiency complaint again focuses
on issues of weight and credibility, and we must defer to the jury in these
matters.  See Johnson, 23 S.W.3d at 7; Gibson, 233 S.W.3d at 452.

            From a neutral review of all the
evidence, we cannot say that the evidence supporting the verdict is so weak or
that the conflicting evidence is so strong as to render the jury’s verdict
clearly wrong and manifestly unjust.  See Watson, 204 S.W.3d at 414-15; Witt,
237 S.W.3d at 397.  Accordingly, we hold that the evidence is factually
sufficient to prove that Schmidt threatened Vercher with imminent bodily
injury.  See Adams, 222 S.W.3d at 51; Tidwell, 187 S.W.3d at 776;
Robertson, 175 S.W.3d at 363-64.

We overrule Schmidt’s issues and affirm the
judgment.

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs in the judgment affirming the conviction.  He does not
join the Court’s opinion.  A separate opinion will not issue.)

Affirmed

Opinion delivered and
filed June 18, 2008

Do not publish

[CRPM]

 







Palatino'> 





[4]
              Chapter 45 of the Code of
Criminal Procedure governs “[c]riminal proceedings in the justice and municipal
courts.”  Tex. Code Crim. Proc. Ann.
art. 45.002 (Vernon 2006).

 





[5]
          Municipal courts
of record are provided for by Chapter 30 of the Government Code.  A
municipality may choose to have either a “municipal court” or a “municipal
court of record” but not both.  See Tex.
Gov’t Code Ann. § 30.00003(e) (Vernon 2004).  A primary distinction
between these types of municipal courts is that a “municipal court” established
under section 29.002 of the Government Code is not a court of record.  Thus, an
appeal from such a municipal court is necessarily by trial de novo because
there is no “trial record” for the county court to consider on appeal.  See
State v. Blankenship, 170 S.W.3d 676, 680 n.7 (Tex. App.—Austin 2005, pet.
ref’d); Tweedie v. State, 10 S.W.3d 346, 348 (Tex. App.—Dallas 1998, no
pet.).  By comparison, an appeal from a municipal court of record must be “based
only on errors reflected in the record.”  Tex.
Code Crim. Proc. Ann. art. 44.17 (Vernon 2006); see also Tex. Gov’t Code Ann. § 30.00014(b) (Vernon Supp. 2006).