

# IN THE
# TENTH COURT OF APPEALS

## No. 10-18-00180-CR

**JOHN JAY JUSTICE,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2016-705-C1

## MEMORANDUM OPINION

In two issues, appellant, John Jay Justice, challenges his convictions for two counts of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2019). Specifically, appellant contends that: (1) the trial court abused its discretion by concluding that the probative value of appellant's usage of racial slurs in detaining trespassers on his property substantially outweighed the danger of unfair prejudice; and (2) the evidence supporting his conviction for aggravated assault with a deadly weapon

is not supported by sufficient evidence because he did not commit the offense of assault, and because the jury was not reasonable in rejecting his defense-of-property justification. We affirm.

## I.  BACKGROUND

On the night in question, appellant's daughter, M.J., invited female friends over to appellant's house.  M.J. was in eighth grade at the time.  At some point that night, the friends invited Jamiah Weathington, a sophomore in high school, and Jacob Delarosa, an eighth-grade student, to come over to appellant's house.  M.J. resisted at first, but eventually relented.

At around 1:00 a.m., appellant awoke and went to the bathroom.  While in the bathroom, appellant could hear several voices in his front yard.  After looking out of the bathroom window for fifteen minutes, appellant discovered that there were several young people outside of his house talking, lounging in hammocks, and sitting in chairs. Appellant knew that M.J. had a few female friends over that night, but he did not recognize the two males, Weathington and Delarosa, who were present that night. Appellant instructed his fiancé, Cassandra Draper, to call 911, and he went outside.

While outside, appellant retrieved a rifle described as an AR-15 from his van parked on the property and pointed the rifle at Weathington and Delarosa.[1]  While doing

---

[1] Several witnesses testified that appellant's gun actually touched Weathington in the back of his neck as he was lying on the ground.

so, appellant shouted racial slurs and ordered the young men to get on the ground.[2] Appellant also demanded to know why the young men were on his property. Shortly thereafter, the police arrived.

Corporal Kelly Phillips and Officer John Donahue of the Robinson Police Department were the officers who arrived at the scene. Upon arriving, the police ordered appellant to lower his rifle, handcuffed the young men, and questioned appellant and the young men about the incident. Corporal Phillips testified that, at the conclusion of her questioning, she determined that no offense had been committed and that appellant's use of force was justified.

The officers left appellant's property and took Weathington and Delarosa home. Thereafter, appellant gathered the girls in the living room of the house and proceeded to question them regarding what happened. In doing so, the testimony showed that appellant yelled at them and used more racial slurs.

Neither Weathington nor Delarosa reported the incident for a few days. Eventually, Weathington's mother reported the incident to the Robinson Police Department superior on duty. Robinson Police Department Detective Mike Noel re-examined the actions taken by appellant that night. By this time, Weathington had filed a civil lawsuit against appellant based on the events that had transpired that evening.

---

[2] The testimony demonstrated that Weathington is African-American, Delarosa is Hispanic, and appellant is Caucasian.

Appellant was arrested and charged with two counts of aggravated assault with a deadly weapon. The two counts alleged that appellant intentionally and knowingly threatened Weathington and Delarosa with imminent bodily injury by pointing a firearm at or in their direction. Appellant was convicted of the charged offenses and was given a five-year prison sentence with a $5,000 fine for each count. However, appellant's sentences were suspended, and he was placed on community supervision for a term of ten years. The trial court certified appellant's right of appeal, and this appeal followed.

## II. ADMISSION OF EVIDENCE OF APPELLANT'S USAGE OF RACIAL SLURS

In his first issue, appellant argues that the trial court abused its discretion by admitting evidence of appellant's usage of racial slurs on the night in question. Appellant asserts that the evidence is so prejudicial that it distracted the jury from its fact-finding duty and, thus, should have been excluded under Texas Rule of Evidence 403. *See* TEX. R. EVID. 403.

### A. Applicable Law

We review a trial court's decision regarding the admissibility of evidence under an abuse-of-discretion standard and uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). If the trial court's ruling is correct on any theory of law applicable to the case, we must uphold the judgment. *See Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

Evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403; *see Greer v. State*, 436 S.W.3d 1, 9 (Tex. App.—Waco 2014, no pet.). Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Allen v. State*, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003); *Jones v. State*, 944 S.W.2d 642, 652-53 (Tex. Crim. App. 1996). In considering a Rule 403 objection, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The trial court has broad discretion in conducting a Rule 403 balancing test, and we will not lightly disturb the trial court's decision. *Allen*, 108 S.W.3d at 284; *see Greer*, 436 S.W.3d at 9. All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones*, 944 S.W.2d at 653. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value, in other

words, the evidence is unfairly prejudicial, that Rule 403 is applicable. *Id.*; *see Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g).

**B.     Discussion**

In the instant case, the trial court conducted a hearing on appellant's motion in limine, wherein appellant sought to prevent the State from introducing evidence of his use of racial slurs during and after the incident.  Initially, the trial court granted appellant's motion in limine.  However, a new judge was appointed to hear this case, and the State moved the trial court to reconsider its ruling.  The new trial judge conducted a hearing on the State's motion to reconsider appellant's motion in limine, whereby the State:  (1) offered the testimony of two witnesses regarding appellant's use of racial slurs during and immediately after the incident; and (2) argued that the evidence established appellant's motive and rebutted his justification of defense of property.  At the conclusion of the hearing, the trial court concluded that "the evidence of proffered testimony is relevant, that the prejudicial nature, if any, is outweighed by the probative value, and I'm going to allow the testimony."

On appeal, appellant generally asserts that evidence of his use of offensive, racial slurs during and immediately after the incident misled the jury because the evidence "caused the jurors to evaluate [his] character rather than making factual determinations." We disagree.

At trial, appellant asserted that his conduct was justified because he was defending his property. The State countered that appellant's conduct was unreasonable, excessive, and unjustified. The State had a need to introduce evidence of appellant's usage of racial slurs during and immediately after the incident because it established appellant's motive for the assaults, rebutted his defense-of-property justification, and provided context for the assaults. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (noting that rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted); *Tibbs*, 125 S.W.3d 84, 89 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (stating that use of racial slurs before and during the commission of an assault is relevant for the purpose of demonstrating motive for the assault); *see also Rodriguez v. State*, No. 10-18-00162-CR, 2019 Tex. App. LEXIS 1465, at *6 (Tex. App.—Waco Feb. 27, 2019, no pet.) (mem. op., not designated for publication) (noting that evidence of use of a racial slur was probative to provide context for the crime committed); *Tuck v. State*, No. 01-06-01086-CR, 2008 Tex. App. LEXIS 8525, at *27 (Tex. App.—Houston [1st Dist.] Oct. 30, 2008, no pet.) (mem. op., not designated for publication) (stating that use of racial slurs before and during the commission of an assault is relevant for the purpose of demonstrating motive for the assault).

Additionally, the record does not reflect that an inordinate amount of trial time was spent on the presentation of the complained-of evidence. At the hearing on the State's motion to reconsider appellant's motion in limine, the State was instructed to

restrict its evidence to appellant's use of racial slurs during and immediately after the incident. Further, the focus of the entire case centered on why appellant used the force he did against Weathington and Delarosa. In other words, the jury was tasked with evaluating appellant's motive for the assaults to determine whether his justification defense was reasonable. Therefore, because appellant's motive and justification defense were the central issues in the case, all of the teenage witnesses were allowed to testify to the racial slurs, though their testimony was confined to the events of the case and provided context for those events. Moreover, there is no indication in this record that the complained-of evidence improperly inflamed the passions of the jury such that a decision was rendered on an improper basis.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the complained-of evidence and its probative value. *See id.*; *see also Conner*, 67 S.W.3d at 202. Thus, we cannot conclude that the trial court abused its discretion by admitting the complained-of evidence. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42; *Allen*, 108 S.W.3d at 284; *Jones*, 944 S.W.2d at 653; *Montgomery*, 810 S.W.2d at 389. We overrule appellant's first issue.

### III. APPELLANT'S DEFENSE-OF-PROPERTY JUSTIFICATION

In his second issue, appellant argues that the evidence supporting his convictions for aggravated assault with a deadly weapon is insufficient because the evidence does not establish that he committed assault, and because the jury was unreasonable in rejecting his defense-of-property justification. We disagree with both contentions.

### A. Applicable Law

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial

evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A person commits aggravated assault if the person commits assault and the person "uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). An assault occurs when a person "intentionally or knowingly threatens another with imminent bodily injury. . . ." *Id.* § 22.01(a)(2) (West 2019). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (West Supp. 2018). It is undisputed that appellant used a deadly weapon in the commission of this offense.

**B.     Discussion**

Under the Penal Code, there are alternative methods of committing assault, including (1) assault by causing bodily injury, or (2) assault by threatening imminent

bodily injury. *See* TEX. PENAL CODE ANN. § 22.01(a)(1)-(2). The jury charge defined "assault" solely as follows: "if the person intentionally or knowingly threatens another with imminent bodily injury." Appellant contends that he did not commit the offense of assault because he did not threaten either of the young men with imminent bodily injury.

The Court of Criminal Appeals has defined "threaten" in part as meaning "'to be a menacing indication of (something dangerous, evil, etc.); as the clouds threaten rain or a storm; . . . to express intention to inflict (injury, retaliation, etc.) . . . .'" *Olivas v. State*, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006) (quoting WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1901 (2d. 1983)). A person commits the requisite threatening conduct "not only when the actor actually causes fear in another, but also (1) when he creates an unacceptable risk that another may be placed in fear, and (2) when he increases the likelihood that he will carry through on a threat and cause a physical injury." *Id.* at 347.

The Court of Criminal Appeals has also defined "imminent" as meaning "'near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous.'" *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (quoting BLACK'S LAW DICTIONARY 676 (rev. 5th ed. 1979)); *Robertson v. State*, 175 S.W.3d 359, 362 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). The term refers to a present threat of bodily injury, rather than a future threat. *Devine*, 786 S.W.2d at 270; *Robertson*, 175 S.W.3d at 362. Moreover, bodily injury is defined as

"physical pain, illness, or any impairment of physical condition."  TEX. PENAL CODE ANN. § 1.07(a)(8).

In the instant case, M.J. testified that appellant came "charging" at the group of kids, calling Weathington and Delarosa "coons," "porch monkeys," and "n****rs" while pointing a rifle at the young men.[3]  M.J. also recalled that appellant got so close to Weathington that appellant's rifle touched the back of Weathington's neck.  Delarosa testified that appellant asked:  "Do you all want to die?"  Delarosa thought he was going to die because appellant was "acting crazy."  K.B. stated that, while pointing the rifle at the young men, appellant screamed racial slurs "told them that they were going to fucking die that he was going to blow their fucking brains out because they were n*****rs and they shouldn't be on his property . . . ."  K.B. corroborated M.J.'s testimony that appellant's rifle touched Weathington on the back of his neck.  Weathington recounted that appellant pointed the rifle and a bright light in his face; that he heard the gun cock; and that appellant told him to "[g]et on the ground you mother fucker and all this."  While he was face-down on the ground, Weathington felt "the cold barrel of the gun" on the back of his head, which made him believe that he was going to die.

Viewing the evidence in the light most favorable to the verdict, a rational factfinder could conclude that appellant charged at Weathington and Delarosa while

---

[3] The Court does not approve of or condone the language used by appellant during this incident; however, it is mentioned in this memorandum opinion to provide context for the encounter.

using racial slurs, pointing a rifle at the young men, threatening "to blow their fucking brains out," and even touching the back of Weathington's neck with his rifle. This evidence is legally sufficient to prove that appellant threatened Weathington and Delarosa with imminent bodily injury. *See id.* §§ 22.01(a)(2), 22.02(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33; *see also Olivas*, 203 S.W.3d at 345, 347; *Devine*, 786 S.W.2d at 270; *Robertson*, 175 S.W.3d at 363.

However, despite the foregoing, appellant contends that the jury was not reasonable in rejecting his defense-of-property justification under section 9.41(a) of the Penal Code.[4] *See* TEX. PENAL CODE ANN. § 9.41(a) (West 2019). Section 9.41(a) provides that: "A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." *Id.*

The State bears the burden of persuasion, but not a burden of production in disproving evidence of defense of property. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). That is, the State need not produce evidence rebutting a defense-of-property claim; it must only prove its case beyond a reasonable doubt. *See id.* In resolving

---

[4] Appellant argues in his brief that he "maintained his composure and refrained from using deadly force during an event that could have ended much worse. . . . Given the latitude that property owners have in protecting their property, Justice acted in the least intrusive and harmful way possible." Appellant appears to argue that his conduct was reasonable because he was justified in using deadly force against Weathington and Delarosa under these circumstances.

a sufficiency-of-the-evidence issue, we look not to whether the State presented evidence which rebutted a defendant's defense-of-property testimony, but rather we determine whether viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and also could have found against appellant on the defense-of-property issue beyond a reasonable doubt. *See id.* at 914. A jury verdict of guilty is an implicit finding rejecting a defendant's defense-of-property claim. *See id.*

The record reveals a number of reasons why the jury could have chosen to reject appellant's defense-of-property justification. First, the girls testified that they invited Weathington and Delarosa over to the house on the evening in question. Next, the testimony showed that when he first heard voices in the front yard, appellant did not immediately go outside to defend his property; rather, he looked out of his bathroom window towards the group of kids for fifteen minutes. Furthermore, there is no indication in the record that Weathington, Delarosa, or any of the other kids were engaging in criminal or other elicit activity at the time of the incident. Rather, the kids were laying in hammocks or sitting in chairs while talking to one another. Moreover, the record shows that, once he decided to go outside, appellant walked a number of feet to his van to retrieve his rifle before charging at Weathington and Delarosa, yelling racial slurs, threatening to "blow their fucking brains out," and touching Weathington's neck with the rifle.

Given that the jury is in the best position to assess the credibility of witnesses and that the jury can believe all, some, or none of the testimony of a particular witness, *see Denman v. State*, 193 S.W.3d 129, 132 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd), we conclude that the jury was permitted to determine that appellant's overly aggressive and belligerent response to a couple of young men invited over to talk and lay in hammocks or sit in chairs was unreasonable and not immediately necessary to terminate a purported trespass on his property. As such, we cannot say that the jury was irrational in rejecting appellant's justification defense. *See Young v. State*, 542 S.W.3d 830, 837 (Tex. App.—Amarillo 2018, pet. ref'd) (holding that the jury was permitted to reject appellant's justification defenses for a number of reasons). We overrule appellant's second issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
(Chief Justice Gray dissenting with a note)*
Affirmed
Opinion delivered and filed July 17, 2019
Do not publish
[CR25]

*(Chief Justice Gray dissents. A separate opinion will not issue.)

