# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00014-CR

**Nathaniel Briscoe, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NO. D-1-DC-10-904064, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Nathaniel Briscoe of murder and tampering with physical evidence and sentenced him to life imprisonment on the murder charge and twenty-five years on the tampering charge. *See* Tex. Penal Code §§ 19.02(b), 37.09(a). He appeals, arguing the evidence is insufficient to support the verdicts and the trial court abused its discretion in denying two motions for mistrial and admitting certain evidence. We affirm the trial court's judgments.

## BACKGROUND

Amy Dickey worked as a prostitute through Craigslist. After midnight on May 21, 2009, a friend drove her to an apartment complex for a prostitution call. The client was appellant Nathaniel Briscoe. On the drive to appellant's apartment, Dickey's driver noted that Dickey smoked crack cocaine and took naps but that her demeanor was calm. Dickey did not complain of any injuries, and her driver did not notice any bruising or other injuries.

When they arrived at the apartment, appellant met Dickey at the entrance gate. Her driver watched Dickey walk away with appellant and was later able to provide the police with a physical description of appellant. Cell phone records confirm that appellant had been in contact with Dickey that evening. For security purposes, Dickey and her driver had agreed that she would call and let him know appellant's apartment number when she arrived and that he would wait outside the apartment complex for her for thirty minutes to an hour. At 1:24 a.m., Dickey called and told her driver she was alright. The driver heard Dickey ask a man which apartment she was in and heard the man say "apartment 251." Dickey, however, was actually in apartment 241 where appellant resided; apartment 251 was vacant. Dickey's driver waited outside for hours but never saw Dickey alive again.

Later that morning, a landscaper discovered Dickey's naked body in a wooded green belt area located approximately one half block from the home of appellant's father. Dickey was lying face down with duct tape matted in her hair and dried blood on the right side of her face. DNA testing done on the duct tape was consistent with a mixture of both Dickey's and appellant's DNA. The body had been covered with a mound of grass clippings, leaves, rocks, and bamboo sticks. A team of investigators searched the green belt area for evidence. During the search, investigators discovered several sticks of bamboo behind the home of appellant's father. This was the only location in the entire search area where bamboo was found. Appellant's father testified that, prior to Dickey's death, he and appellant had been doing a gardening project using bamboo procured by appellant. When questioned by investigators four days after Dickey's death, appellant's father noticed that bamboo from the project was missing from the garage.

During a four-hour taped interview with the police which was admitted into evidence, appellant initially denied knowing Dickey. When shown a picture of Dickey, appellant wrote on the photograph, "I do not recognize this person." Later he acknowledged contacting Dickey for prostitution services but alleged that the incident occurred in December—months prior to her death—and that Dickey had never been in his apartment. When confronted with the possibility that Dickey's DNA could be found in his apartment, appellant eventually acknowledged she had been in his apartment on the night of her death and alleged that they had engaged in sexual intercourse. Appellant told police that Dickey had become upset during sex after he bit her on the shoulder and the condom broke. Appellant also told police that he enjoyed squeezing a woman's neck during sex and admitted that while he was lying on top of Dickey during intercourse he used her neck as a brace to push himself up while squeezing her neck with both of his hands for up to five minutes. Dickey responded, according to appellant, by asking him to "lighten up" on her neck but appellant denied that she became unconscious during sex. Appellant told police that Dickey then left his apartment alive with her payment of $150.

On the morning after Dickey's death, appellant told police that he had parked his car to smoke at a location about 100 yards from where Dickey's body was found. Then, after going to his father's house to do laundry, he claimed he ate at a nearby restaurant close to where the body was discovered. The restaurant, however, was closed and under construction that day.

Upon searching appellant's home, police found a small piece of rolled-up duct tape on the bedroom carpet at the foot of the bed and a larger piece of duct tape tacked to the back corner of the dresser. DNA testing on the duct tape discovered on the bedroom floor revealed a mixture of

3

DNA from at least three contributors. The DNA supervisor for the Austin Police Department testified that Dickey and appellant could not be excluded as contributors to the DNA profile. A small blood stain on the carpet by the bed was also discovered. The DNA supervisor testified that Dickey was the source of the stain, excluding identical siblings. Photographs of appellant taken during the search show what appears to be an injury below appellant's left nipple, an injury near the shin of his right leg, and a scratch on his left thigh. Upon searching appellant's rental car, police found dead grass and leaves consistent with the material found concealing Dickey's body.

The chief medical examiner for Travis County concluded Dickey died as a result of homicidal asphyxia from suffocation or strangulation. The medical examiner made his conclusions prior to and without the benefit of appellant's statement to the police. Dickey's body had several injuries, including a large bruise on her left neck muscle, tiny hemorrhages on her eyes and eyelids, lacerations and bruising on her lips, bruising on her upper arms, faint abrasions resembling ligature marks on her wrists, a one-inch bruise on the top of her head, and hemorrhaging in the lining of her sinuses. Her lungs had also filled with fluid but her voice box was intact. The medical examiner concluded that the blood on her face likely came from her mouth as part of the dying process but was not the result of a pre-mortem injury.

The medical examiner testified that it would take a "good amount of force" to cause the bruise on Dickey's neck, it was unusual to see a bruise that large on the neck, it was a recent injury because there was no evidence of healing, and the injury was consistent with someone pressing their hand against that portion of the neck for about five minutes or punching hard on the side of her neck. Although she did not have a corresponding bruise on the right neck muscle typical

4

in strangulation, the medical examiner testified that this could be caused by many variables, including if the victim was lying on her side and pressure was only coming from one side of her neck. The medical examiner additionally testified that the hemorrhaging in her eyes and fluid in her lungs were consistent with death by asphyxiation. Although hemorrhaging in the eyes may also result from the body lying face down, the medical examiner testified that this was less common. The medical examiner further testified that the ligature marks on her wrists were consistent with being bound or tied with wide tape or a belt. With regard to the bruising and lacerations on her lips, the medical examiner testified that these injuries were consistent with a punch or a palm pressed hard against the mouth.

With regard to Dickey's cocaine use, forensic toxicology testing revealed that she had cocaine in her blood at a concentration of .67 milligrams per liter—an amount the medical examiner described as "pretty average." According to the medical examiner, this amount of cocaine could not have resulted in an overdose but any amount of cocaine use can cause death by sudden heart attack and this was more likely to occur if the person was a chronic user. The medical examiner, however, excluded cocaine as the cause of Dickey's death based on the bruise on her neck, the hemorrhaging in her eyes, and fluid in her lungs—which were all consistent with death by asphyxiation—as well as the additional bruising on the body and the fact that she was found naked in a field concealed with leaves and grass. Based on the compilation of these findings, the medical examiner concluded the death was caused by homicidal asphyxiation from strangulation or suffocation. The medical examiner further testified that appellant having his hands on her neck for five minutes would be clearly sufficient to cause her death.

The defense, however, called a physician specializing in psychiatry and forensic psychology who testified that in his opinion Dickey died from cocaine delirium. The expert witness testified that cocaine delirium became a recognized syndrome after a series of deaths occurred in the 1980's involving individuals who had non-lethal amounts of cocaine in their system but suddenly died after the police used minimum restraint again them. The witness described cocaine delirium as a state in which a person experiences wild fluctuations in mood from cocaine use, such that the person may appear fine but then suddenly become incoherent or act crazy. He further testified that people experiencing cocaine delirium can die from what "is thought to be . . . a respiratory exhaustion" in which the person will "just stop breathing." According to the defense expert, it is believed that cocaine delirium can be aggravated by use of restraint, but medical professionals are not certain of this fact "because it's a very hard issue to study."

In forming his opinion that Dickey died from cocaine delirium, the defense expert conducted an interview with appellant and based his opinion on the circumstances of Dickey's death as described by appellant[1] and Dickey's history of drug use but did not review the police report, appellant's interview with the police, or the autopsy photographs. On cross-examination, the expert admitted that defense counsel had informed him that appellant was a known liar. When asked if it was his testimony that the medical examiner was wrong, the expert answered "no."

The defense additionally called a boyfriend who had known Dickey for two years prior to her death. The witness testified that Dickey had been using "a lot" of cocaine for a "long

_____

[1] The witness did not testify as to any of the details of Dickey's death as described by appellant during his interview.

6

period of time" leading up to her death and that he guessed she was using as much as $500 worth per day. According to the witness, Dickey had complained of heart palpitations and on one occasion asked to be taken to the hospital, but he declined because he believed she was seeking attention and being melodramatic.[2] The witness further testified that Dickey would stay up for several days in a row and "just become delusional" and "ma[k]e no sense at all." On the day before she died, the witness testified that Dickey was high but was not so "strung out" that she was incoherent.

## DISCUSSION

### *Sufficiency of the Evidence*

In his first point of error, appellant challenges the legal sufficiency of the evidence supporting his convictions and the jury's deadly weapon finding.[3] Appellant improperly combines all three points of error into a single argument. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We first address the sufficiency of the evidence supporting appellant's convictions for murder and tampering with physical evidence.

The standard for determining whether the evidence is legally sufficient to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 315–19 (1979) (emphasis in original); *see Garcia v.*

---

[2] It is not clear from the record on what date this incident occurred.

[3] Appellant additionally argues the evidence is factually insufficient to support his convictions. However, "we do not review the factual sufficiency of the evidence to support a jury's finding on the elements of a criminal offense that the State is required to prove beyond a reasonable doubt." *Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011).

7

*State*, 367 S.W.3d 683, 686–67 (Tex. Crim. App. 2012). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson*, 364 S.W.3d at 294.

In reviewing the sufficiency of the evidence, "our role is not to become a thirteenth juror. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Dewberry*, 4 S.W.3d at 740. Thus, reviewing courts give deference to "'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19). Circumstantial evidence is as probative as direct evidence in establishing the guilt of a defendant, and the standard of review for both direct and circumstantial evidence is the same. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see also Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). "When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination." *Garcia*, 367 S.W.3d at 687; *see Jackson*, 443 U.S. at 326. "As long as the verdict is supported by a reasonable inference, it is within the province of the of the factfinder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 523.

8

## A.     Murder Conviction

Appellant challenges his murder conviction, arguing there is insufficient evidence to support the jury's finding that he caused Dickey's death.  Under the hypothetically correct jury charge as authorized by the indictment in this case, appellant committed the offense of murder if he intentionally or knowingly caused Dickey's death or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Dickey's death.  *See* Tex. Penal Code § 19.02(b)(1) & (2).  When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories.  *Guevara*, 152 S.W.3d at 49.[4]

After reviewing the evidence in the light most favorable to the prosecution, we conclude a rational jury could have found appellant guilty of murder beyond a reasonable doubt. First, Dickey was last seen alive with appellant, and her blood was found in his apartment.  Duct tape consistent with Dickey's DNA profile was also found on appellant's bedroom floor.  In addition, DNA testing on the duct tape found matted in her hair revealed a mixture of DNA consistent with both Dickey's and appellant's DNA.  Second, it was uncontested that Dickey's physical injuries were consistent with inculpatory statements made by appellant to the police.  Dickey had a large, recent bruise on her neck, hemorrhaging in her eyes, and fluid in her lungs.  These injuries were consistent with appellant's admissions to the police that he used Dickey's neck as a brace to push himself up during sex and had squeezed her neck with both hands for up to five minutes.  A jury could also

---

[4]  The court's charge to the jury listed the theories in the disjunctive, and the jury returned a general verdict of guilty.  *See* Tex. Code Crim. Proc. art. 37.07 § 1(a).

9

reasonably infer that the ligature marks on her wrists came from the duct tape found on the bedroom floor and in her hair. Further, her injuries were consistent with the medical examiner's conclusion that Dickey died from homicidal asphyia from suffocation or strangulation. Moreover, the medical examiner testified that appellant placing his hand on Dickey's neck for up to five minutes—as admitted by appellant—would have been clearly sufficient to cause her death.

There was also ample evidence from which the jury could rationally conclude that appellant had been purposely dishonest about his relationship with Dickey and the circumstances of her death. There was also evidence connecting appellant to the concealment of Dickey's body, including his own admission that he had parked his car within 100 yards from where Dickey's body was found on the morning of her death, and the jury could also have reasonably inferred that the bamboo covering her body came from the home of appellant's father. While each piece of evidence may lack sufficiency when viewed in isolation, the totality of the evidence coupled with the reasonable inferences that may be drawn from that evidence is legally sufficient to support appellant's murder conviction.

On appeal, however, appellant contends the state failed to establish the necessary "but for" causal connection between his conduct and Dickey's death. Appellant's causation argument requires application of section 6.04(a) of the penal code, which provides that "a person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." Tex. Penal Code § 6.04(a). Under section 6.04, there must be a "but for" causal connection between the defendant's conduct and the resulting

10

harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). If concurrent causes are present, the necessary "but for" causal connection is satisfied when either: (1) the defendant's conduct is sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct coupled with another cause is sufficient to have caused the harm unless the additional cause is clearly sufficient by itself to produce the result and the accused's conduct is clearly insufficient by itself to cause the result. Tex. Penal Code § 6.04(a); *Robbins*, 717 S.W.2d at 351. The existence or nonexistence of such a causal connection is normally a question for the jury's determination. *See Dorsche v. State*, 514 S.W.2d 755, 757 (Tex. Crim. App. 1974).

Here, the medical examiner testified that appellant placing his hands on Dickey's throat for five minutes was consistent with the injury on her neck and would have been clearly sufficient to cause her death. Accordingly, the appellant's conduct alone—regardless of Dickey's cocaine use—was clearly sufficient to have caused her death, and he was criminally responsible for her death under section 6.04. *See* Tex. Penal Code § 6.04(a).

With regard to the defense's expert witness who testified that Dickey died from cocaine delirium, the expert based his opinion partially on his interview with appellant whom he admitted was a known liar. More importantly, the defense expert also admitted that he had not reviewed the police report, appellant's four-hour interview with the police, or the autopsy photographs. Significantly, the expert also did not refute the medical examiner's findings. Here, the resolution of conflicting witness testimony is rightly within the province of the jury. *Brooks v. State*, 323 S.W.3d 892, 899–902 (Tex. Crim. App. 2010). When confronted with conflicting theories and testimony, we defer to the jury's determination and conclude that the jury must have resolved these conflicts in favor of its verdict. *Id.*; *see also Clayton v. State*, 235 S.W.3d 772, 779 (Tex. Crim. App. 2007).

11

Although there was conflicting expert testimony regarding the cause of Dickey's death, a jury could have reasonably found the necessary "but for" causal connection between appellant's conduct and Dickey's death. Giving proper deference to the jury's verdict, we conclude the evidence is sufficient to sustain appellant's murder conviction.

**B.      Tampering with Evidence Conviction**

To prove appellant committed the offense of tampering with physical evidence, the State was required to prove beyond a reasonable doubt that appellant—knowing that an investigation was pending—concealed Dickey's body with intent to impair its verity or availability in the investigation. *See* Tex. Pen. Code § 37.09(a)(1); *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008). Appellant does not dispute the sufficiency of the evidence showing that he concealed the body with intent to impair its verity or availability as evidence. Rather, appellant's sole argument is that there was insufficient evidence that appellant "knew that an investigation was pending if and when he concealed Dickey's corpse."

We conclude there is sufficient evidence to sustain appellant's tampering with evidence conviction. Regarding appellant's knowledge of a pending investigation, a "person acts knowingly, or with knowledge, with respect to the . . . circumstances surrounding his conduct when he is aware . . . that the circumstances exist." Tex. Pen. Code § 6.03(b); *see Williams*, 270 S.W.3d at 142–43. Texas courts have construed the term "pending"—as used in the statute—as requiring the State to prove that the defendant was aware an investigation was "impending, or about to take place." *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *see also Barrow v. State*, 241 S.W.3d 919, 923 (Tex. App.—Eastland 2007, pet. ref'd).

12

Here, if appellant was concealing a corpse, he was certainly aware that the victim had died and that an investigation into her disappearance was impending or about to take place. It would also be reasonable for the jury to infer that appellant was aware Dickey's driver was waiting outside for her and would notice that she was missing, thus triggering an investigation into her disappearance. Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that appellant concealed Dickey's body knowing an investigation was pending and with intent to impair the verity or availability of the evidence.

## C.    Deadly Weapon Finding

Appellant additionally challenges the jury's affirmative finding that he used his hands or an unknown object as a deadly weapon in the commission of the murder.[5] The code of criminal procedure authorizes a deadly weapon finding upon sufficient evidence that a defendant used or exhibited a deadly weapon during the commission of a felony offense. Tex. Code Crim. Proc. art. 42.12 § 3g(a)(2). A deadly weapon may be anything that in the manner of its use is capable of causing death or serious bodily injury. *See* Tex. Penal Code § 1.07(a)(17)(B).

While hands are not deadly weapons per se, a jury may find that they were used as a deadly weapon based upon their manner of use or intended use and their capacity to produce death

---

[5] The jury made an affirmative finding of a deadly weapon. In addition, the murder charges contained several alternate means by which the offense was committed, including two allegations involving the use of a deadly weapon. A deadly weapon finding, however, is not an essential element for a murder conviction. *See* Tex. Penal Code § 19.02(b). As discussed above, we have concluded there is sufficient evidence to convict appellant of murder regardless of the deadly weapon finding. *See Johnson v. State*, 364 S.W.3d 292, 296 (Tex. Crim. App. 2012); *Robertson v. State*, 175 S.W.3d 359, 364–65 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

or serious bodily injury. *Turner v. State*, 664 S.W.2d 86, 89–90 (Tex. Crim. App. 1983); *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex. App.—Austin 1998, no pet.). The State, however, need not show that the hands actually caused serious bodily injury or death. *See Jefferson*, 974 S.W.2d at 892. Rather, the State must only prove beyond a reasonable doubt that the manner in which the hands were used was capable of causing serious bodily injury or death. *Id.*; *see also Hill v. State*, 913 S.W.2d 581, 583 (Tex. Crim. App. 1996). Evidence that hands were used to choke or strangle someone is sufficient to support a finding that the hands were deadly weapons. *See Judd v. State*, 923 S.W.2d 135, 140 (Tex. App.—Fort Worth 1996, pet. ref'd) (hands used as deadly weapon when death caused by manual strangulation); *Shockley v. State*, 747 S.W.2d 470, 474 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (hands used as deadly weapon in murder by strangulation); *see also Goode v. State*, No. 03-10-00254-CR, 2011 WL 477038, at *5 (Tex. App.—Austin Feb. 9, 2011, no pet.) (mem. op., not designated for publication) (hands used as deadly weapon in aggravated assault case where defendant strangled victim).

Here, the State introduced evidence that appellant used his hands in a manner capable of causing death or serious bodily injury. During his police interview, appellant admitted squeezing Dickey's neck and placing both hands on her neck for up to five minutes. The medical examiner testified that appellant's actions were sufficient to cause her death. Dickey also had a large bruise on her neck consistent with appellant's admissions. *See Tucker v. State*, 274 S.W.3d 688, 692 (Tex. Crim. App. 2009) ("The injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used."). Reviewing this evidence in the light most favorable to the conviction, the jury could have rationally concluded that appellant's hands, in the manner they were used against Dickey, were capable of causing serious bodily injury.

14

*Motions for Mistrial*

In points of error two and three, appellant contends that a mistrial should have been granted based on: (1) improper jury argument by the State in its closing and (2) the State's publication of a photograph not admitted into evidence. In each instance, the trial court denied appellant's motion for mistrial but instructed the jury to disregard. When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for mistrial, the issue on appeal is whether the trial court abused its discretion in denying the motion for mistrial. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).

## A. Improper Jury Argument

In point of error two, appellant complains the trial court abused its discretion in failing to grant his motion for mistrial after the State allegedly commented on his right to remain silent, thus violating his United States and Texas constitutional right against self-incrimination. During closing argument at the guilt phase of trial, the prosecutor stated:

> [The State]: Ladies and Gentlemen, Amy Dickey cannot be here today. How does that limit the State's ability to give you evidence? Why don't we have more of that in a murder case? That's why.

The prosecutor then pointed at appellant. Appellant objected on the grounds that the statement was an improper comment on his failure to testify and moved for mistrial. During the subsequent bench conference, the prosecutor stated that he had not intended to make a statement regarding appellant's failure to testify; rather, his statement was directed at the fact that the State would have had more

15

evidence if Dickey were alive and could testify. The trial court denied the motion for mistrial but instructed the jury to disregard the statement.

Prosecutorial argument that refers to a defendant's failure to testify violates the defendant's constitutional and statutory right against compelled self-incrimination. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08; *see also Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). The reviewing court must consider the prosecutor's comment from the jury's standpoint, and the reference to the "defendant's failure to testify must be clear." *Bustamante*, 48 S.W.3d at 764. It is not sufficient that the language might be construed as an implied or indirect allusion to the defendant's failure to testify. *Id.* Rather, the test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.*; *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). "Language that can reasonably be construed to refer to a failure to present evidence other than from the defendant's own testimony does not amount to a comment on [the defendant's failure] to testify." *Staley v. State*, 887 S.W.2d 885, 898 (Tex. Crim. App. 1994). Argument that points to a lack of evidence that only the defendant personally can supply, however, violates the defendant's right against self-incrimination. *Madden v. State*, 799 S.W.2d 683, 699 (Tex. Crim. App. 1990). In applying this standard, the context in which the comment was made must be analyzed. *Cruz*, 225 S.W.3d at 548.

We conclude the trial court did not abuse its discretion in denying the motion for mistrial. Viewed from the jury's perspective, the prosecutor's comments would not necessarily or naturally be taken as a comment on the defendant's failure to testify. Nor do the comments clearly

and directly draw the jury's attention to an absence of evidence that only the defendant could have supplied. *Compare Pollard v. State*, 552 S.W.2d 475, 477 (Tex. Crim. App. 1977) (where victim and accused were only persons present during offense, prosecutor's remark that victim's statement was uncontradicted was comment on defendant's failure to testify because defendant was only person who could refute victim's testimony); *Norton v. State*, 851 S.W.2d 341, 345 (Tex. App.—Dallas 1993, pet. ref'd) (prosecutor's comment that there "were only two people there and we heard from one of them" directly calls jury's attention to absence of evidence that only defendant's testimony could supply).

Rather, the prosecutor's statement can reasonably be construed as referring merely to the fact that the State could not present more evidence because the victim was deceased and could not testify. *See Staley*, 887 S.W.2d at 895 (language that can reasonably be construed to refer to failure to present evidence other than from defendant's own testimony does not violate right against self-incrimination); *see also Carrillo v. State*, No. 13-01-649-CR, 2004 WL 34857, at *8 (Tex. App.—Corpus Christi Jan. 8, 2004, pet. ref'd) (mem. op., not designated for publication) (prosecutor's comments during closing argument that only murder victim knows who pulled trigger and "exactly what happened" were not improper comments on defendant's failure to testify). When placed in context, the prosecutor pointing his finger at appellant while making the statement merely indicated what the jury already knew—that the prosecutor believed appellant was responsible for Dickey not being alive to tell her story in the courtroom. The prosecutor confirmed that this was his intent during the bench conference following the objection. Further, the prosecutor made no comparison between the victim's inability to testify and appellant's ability but failure to testify.

17

*Compare Strain v. State*, 126 S.W.3d 207, 210 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("By structuring his argument in this way, the State made a direct comparison between those witnesses who testified at trial and the defendant, who did not."). At best, the statement might be construed as an implied or indirect allusion to the appellant's failure to testify, but we cannot conclude the jury would necessarily take it as a comment on appellant's failure to testify. *See Cruz*, 225 S.W.3d at 548. Accordingly, we hold the trial court did not abuse its discretion by denying appellant's motion for mistrial.

Even if the argument were a comment on appellant's failure to testify, however, we would still conclude the trial court did not abuse its discretion by denying appellant's motion for mistrial. In determining whether improper jury argument warrants a mistrial, we balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie*, 221 S.W.3d at 700; *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). In reviewing these factors, we observe that—assuming that the prosecutor's statement was in fact a comment on appellant's failure to testify—the statement was brief, not repeated, and not a clear reference to the appellant's failure to testify. *See Archie*, 221 S.W.3d at 700 (noting brevity of prosecutor's comment on defendant's failure to testify weighed against reversal). Accordingly, the magnitude of any prejudicial effect the comments might have had on the jury was slight.

Moreover, the trial court promptly instructed the jury to disregard the comments. *See id.* While there is a presumption that an instruction to disregard generally does not cure a

comment on the accused's failure to testify, the court of criminal appeals has instructed us that this presumption "has been eroded to the point that it applies only to the most blatant examples." *Moore v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999) (quoting *Waldo v. State*, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988)). "Otherwise, the Court has tended to find the instruction to have force." *Id.* We cannot conclude that the prosecutor's comments in this case were such a blatant violation of appellant's right against self-incrimination that the trial court's prompt instruction could not cure any prejudicial effect. Further, the jury charge again instructed the jurors that they were not to refer to, allude to, or take into consideration the fact that appellant had not elected to testify. *See Archie*, 221 S.W.3d at 700 (jury instruction sufficiently ameliorated any potential harm from prosecutor's comment on defendant's failure to testify during punishment phase of trial). Accordingly, under these facts, we would conclude that the trial court sufficiently ameliorated any potential harm. *See id.*; *see also Brown v. State*, 92 S.W.3d 655, 665–69 (Tex. App.—Dallas 2002), *aff'd on other grounds*, 122 S.W.3d 794 (Tex. Crim. App. 2003) ("In light of the brevity of the remark at issue and its inadvertent nature, nothing in the record shows the comment was so blatant that it would have rendered an instruction to disregard ineffective.").

Lastly, the evidence in the record supported the verdict reached by the jury. The evidence showed that appellant admitted squeezing Dickey's throat and putting his hands on her neck for up to five minutes and that Dickey had injuries consistent with death by asphyxia from strangulation. Due to the strength of the State's case, it is likely that the same verdict would have been reached regardless of the prosecutor's comment. Given the mildness of the comments, the trial court's curative actions, and the strength of the State's case, we would conclude—even if the

prosecutor's statement was a comment on the defendant's failure to testify—that the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See Brown*, 92 S.W.3d at 659.

**B.      State's Publication of Unadmitted Photograph**

In point of error four, appellant complains the trial court abused its discretion in denying his motion for mistrial after the State inadvertently published a photograph to the jury that the trial court had not admitted into evidence. Detective Fugitt searched appellant's home and took photographs of appellant during the search. During Detective Fugitt's testimony explaining a series of photographs depicting appellant's injuries at the time of the search, the State mistakenly published and zoomed in on a photograph depicting a small plastic bag containing four white pills sitting on top of a pair of blue jeans strewn on the floor. Appellant objected and requested a mistrial on the grounds that the photograph was not admitted into evidence and was potentially prejudicial because the jury could have inferred that appellant used illegal drugs. The trial court denied the motion for mistrial but granted appellant's subsequent request for a curative instruction, instructing the jury to disregard the image and not consider it in any manner during their deliberations or consideration of the case.

Whether an improper reference to an extraneous offense warrants a mistrial depends on the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999); *see also Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam). Generally, we are to presume the jury will follow the trial court's instruction to disregard evidence that has not been admitted. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Waldo*, 746 S.W.2d at 754. Therefore, in most instances, an instruction to disregard will cure any error associated with an

improper reference to an extraneous offense committed by the defendant. *See Ovalle*, 13 S.W.3d at 783; *Rojas v. State*, 986 S.W.2d 241, 250–51 (Tex. Crim. App. 1998). A mistrial is required only when the improper evidence is so clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (per curiam); *Ladd*, 3 S.W.3d at 567. In analyzing whether an improper reference to an extraneous offense is so prejudicial that the case must be re-tried, we consider the three factors previously discussed: (1) the prejudicial effect of the error; (2) the curative measures taken; and (3) the certainty of conviction absent the prejudicial event. *Hawkins*, 135 S.W.3d at 77.

We first address the prejudicial effect of publishing the photograph to the jury. Although evidence of an extraneous offense is inherently prejudicial, no testimony or documents were put before the jury indicating that appellant had in fact used illegal substances, and it is not clear from the picture whether the pills belonged to appellant or whether the pills were an illegal substance. Accordingly, the photograph did not directly implicate appellant and any inference the jury could have made from the photograph would have been vague. *See Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994) (reference to extraneous offense did not warrant mistrial when reference was "rather vague" and "did not directly implicate appellant"); *see also Rojas*, 986 S.W.2d at 250 (witnesses's answer did not warrant mistrial when "comment was not a concrete reference to an extraneous offense, but merely vague speculation"). Moreover, the prejudicial impact of a photograph depicting unidentified pills may not have been very great in light of the offense charged—murder by asphyxia from strangulation or suffocation. *See Hernandez v. State*, 805 S.W.2d

21

409, 414 (Tex. Crim. App. 1990) (improper reference to prior unauthorized use of motor vehicle did not warrant mistrial where crime charged was "extremely violent" murder).

Accordingly, we cannot conclude that the photograph by itself was so clearly prejudicial and of such character that it was impossible to withdraw the impression produced on the minds of the jurors —particularly when balanced against the trial court's immediate instruction to disregard and the strength of the State's case as previously discussed. *See Ladd*, 3 S.W.3d at 567 (prosecution's improper question asking whether witness was aware defendant was smoking crack cocaine on night of offense did not warrant mistrial when question did not actually assert defendant was smoking cocaine and trial court could have reasonably concluded question was not so inflammatory as to be incurable). Consequently, we conclude the publication of the photograph was not so highly prejudicial and incurable that the trial court erred by denying the motion for mistrial. We overrule appellant's third point of error.

### *Relevance of Admitted Evidence*

In his final point of error, appellant complains the trial court abused its discretion in admitting three items into evidence which appellant objected to on relevance grounds. A trial court's ruling on the admissibility or exclusion of evidence is reviewed under an abuse of discretion standard. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A reviewing court affords the trial court great discretion in making evidentiary decisions. *Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990). An appellate court "must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco*, 154 S.W.3d at 129. A reviewing court may not reverse the trial court's evidentiary ruling

22

if it was within the zone of reasonable disagreement. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003). "Trial courts should favor admission in close cases, in keeping with the presumption of admissibility of relevant evidence." *Montgomery*, 810 S.W.2d at 389.

## A.    Shovel

During the trial of this case, over appellant's relevancy objection, the judge allowed the State to introduce a shovel that had been seized from appellant's apartment. Appellant argued the shovel was not relevant because Dickey's body had been covered in brush and not buried in dust. Under our rules of evidence, all relevant evidence is admissible. Tex. R. Evid. 402. "Relevant evidence means having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. The evidence need not by itself prove or disprove a particular fact to be relevant; "it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Montgomery*, 810 S.W.2d at 376.

The State's theory in this case was that appellant dumped Dickey's body in a wooded area and then covered the body with grass clippings, rocks, leaves, and bamboo. The fact that appellant had a shovel readily available to assist him in this task is relevant; it provides a "small nudge" toward proving that appellant tampered with evidence by attempting to conceal the body. Accordingly, we conclude the trial court did not abuse its discretion in admitting the shovel.

## B.    Computer Hard Drive

During the trial of the case, the State sought to admit an external hard drive seized from Dickey's apartment. The evidence had been seized by a detective from the APD computer

23

forensic section. On voir dire, the detective stated that he had examined the hard drive and had not found "anything that was determined to be relevant." Appellant objected on the grounds of relevance, but the trial court overruled the objection and admitted the hard drive into evidence. The detective then testified to the jury that he had not found "anything of relevance" on the hard drive.

Appellant complains on appeal that the trial court abused its discretion in admitting the hard drive. Regardless of whether the trial court erred in admitting the hard drive, however, appellant failed to make any argument as to how the error affected his substantial rights. The admission of evidence in violation of an evidentiary rule is non-constitutional error that we must disregard unless the error affected an appellant's substantial rights. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see* Tex. R. App. P. 44.2(b). An error affects a substantial right when it has a substantial and injurious effect or influence on determining the jury's verdict. *See Garcia*, 126 S.W.3d at 927. As the uncontradicted testimony at trial established that the hard drive was irrelevant and appellant failed to provide any argument as to how the evidence influenced the jury's verdict, we conclude any error in admitting the evidence did not affect appellant's substantial rights and cannot be a grounds for reversal. *See* Tex. R. App. P. 44.2(b).

## C. Japanese Animated Adult Pornography

During the punishment phase of trial, the judge allowed the State to introduce two Japanese animated adult pornography films seized from appellant's apartment. The films contained several different scenes depicting women enduring violent sexual abuse, including being involuntarily bound, sexually assaulted, and tortured. Appellant objected to the relevancy of the

24

films, contending that there was no scientific basis for the assertion that watching violent sexual pornography reflected a predisposition to engage in such behavior. The trial court overruled the objection, concluding the films were relevant because they depicted violent sexual behavior against unwilling participants—which was consistent with the State's theory at trial that appellant had strangled Dickey during sex. The trial court also noted that Dickey had been found with duct tape in her hair and ligature marks around her wrists suggesting she had been bound.

Article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a non-capital criminal trial and grants the trial court broad discretion to admit evidence that the court deems relevant to sentencing. *See* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). Under Article 37.07, the State and the defendant may offer evidence during the punishment phase of a trial as to any matter that the court deems relevant to sentencing, including evidence of a defendant's character and the circumstances of the offense for which he is being tried. *Id.* Under Article 37.07, the admissibility of evidence at the punishment phase of trial is a function of policy rather than relevancy. *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009); *Come v. State*, 82 S.W.3d 486, 491 (Tex. App.—Austin 2002, no pet.). In ascertaining what is relevant to sentencing, the focus is on what is helpful to a jury in deciding an appropriate sentence for a defendant. *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008); *Come*, 82 S.W.3d at 491. Evidence is relevant, in this context, if it helps the fact finder decide what sentence is appropriate for a particular defendant given the facts of the case. *Hayden*, 296 S.W.3d at 552.

In this case, the appellant's ownership of violent pornography—like a defendant's choice in tattoos or personal drawings—"can reflect his character and/or demonstrate a motive for

his crime" and was relevant to sentencing. *Conner v. State*, 67 S.W.3d 192, 201 (Tex. Crim. App. 2001) (defendant's "choice of tattoo, like personal drawings," relevant to sentencing as evidence of character and motive). As noted by the trial court, the evidence was relevant in this case because it demonstrated a possible motive for appellant's crime given the fact that appellant admitted having sexual intercourse with Dickey and she was found with ligature marks on her wrists and duct tape was found in her hair and on appellant's bedroom floor. Given the facts of this case, we cannot conclude the trial court abused its discretion in admitting the pornography during sentencing.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   August 29, 2013

Do Not Publish