James T. Campbell, Justice
Appellant Terry Daniel Young appeals his conviction by jury of the felony offense of aggravated kidnapping[1] and the resulting sentence of forty years of imprisonment. His two appellate issues contend that evidence presented was insufficient to support his conviction and the court erred by denying his requested instruction. Disagreeing with both contentions, we will affirm.
Background
Police investigation began when the body of Lance Hooser, bearing tattoos identifying him with the Aryan Brotherhood, was found on a street in north central Amarillo. The autopsy showed one of his two gunshot wounds caused his death. His body also bore the effects of abrasions, lacerations and similar wounds on his head, around his neck and at other locations. Reinforced tape and plastic-covered metal wire were wrapped around his wrists and ankles.[2]
Investigation of Hooser's death identified five suspects: appellant, Robert Melton, Jeffrey Noblett, Ricky Burns and Bobby Crawford. Investigators learned that Hooser had been staying at a local residence occupied by Robin Boyd. Boyd gave the officers suitcases and bags she said belonged to Hooser. In one bag, officers found a .40 caliber Smith & Wesson pistol. Another woman, Hooser's girlfriend, gave police recorded voice mail of messages from appellant. A recorded conversation between appellant and Noblett was obtained through a download from Noblett's cell phone. Five days after Hooser's death, officers arrested appellant outside his home in an SUV.
Officer Michael Rolan interviewed each of the five suspects. Rolan learned Hooser stole from appellant a .40 caliber Smith & Wesson pistol and $500. Melton and Noblett worked for appellant in his contracting business and Crawford was appellant's friend. All were aware that appellant was looking to get his pistol back from Hooser. Also, several days before Hooser's death, Noblett had an encounter with him after Noblett loaned his pickup to Hooser but Hooser never returned it.
On the day of Hooser's death, a female friend of Melton's, Anna Atkins, visited Boyd's residence. She found Hooser was at the house, sleeping, and learned that Boyd did not want him there. Atkins called Melton and Melton called appellant, telling appellant he knew where his stolen pistol *833 could be found. Appellant picked up Melton. Burns was with Melton at the time, and went along also. Appellant told Rolan that on the way to Boyd's house, the men stopped at an AutoZone store and bought a roll of reinforced tape. While they were at the store, Burns mentioned he had a pistol with him.
At his trial on the charge of aggravated kidnapping, the jury viewed Rolan's recorded interview of appellant. Appellant also testified at trial. He told of Hooser's theft of his money and his pistol. He particularly wanted the return of his pistol, which his wife had given him for his birthday. At Boyd's house, Crawford and Noblett arrived in their own car, joining appellant, Melton and Burns. Appellant testified the other men found Hooser and beat him. He denied participating in the beating but acknowledged he wrapped tape around Hooser's limbs. The tape did not hold Hooser, and appellant told Noblett to get "something stronger." Noblett returned with the wire, which the men then used to bind Hooser's ankles and wrists.
Appellant testified Melton wanted to take Hooser away from the house and they loaded the tied-up Hooser into appellant's SUV.[3] Only Burns left with appellant. While appellant drove, Hooser and Burns again began to fight. Burns shot Hooser twice. Appellant drove a short distance, then stopped and left Hooser's body in the street.
During cross-examination, appellant admitted he said in a voicemail to Hooser's girlfriend that if he found Hooser, "he's not going to be breathing anymore." He also acknowledged he told Noblett in a recorded telephone conversation that "If you find him, call me and I'll come help." He also told Noblett he would "put a bullet in [Hooser's] head." He further agreed with the prosecutor that he told Noblett he had guns and "it would be great if [Hooser] pulled a gun on [me]" because then it would be "legal" that appellant shot Hooser. Appellant admitted he knew Burns had a gun when they stopped to buy the tape. He also agreed he "knew going over there that y'all were going to tie [Hooser] up and carry him out of there."
Analysis
Sufficiency of the Evidence
The court's charge instructed the jury on the requirements of party liability, and the application paragraph authorized the jury to find appellant guilty of the aggravated kidnapping based on his own conduct or as a party.[4]
*834 In his first issue, appellant challenges the sufficiency of the evidence to support his conviction. Appellant contends the evidence was insufficient because the "uncontroverted testimony established that the force used in removing the decedent from the property was within justifications prescribed by law between defense of persons, third persons, and defense of third person's property." And, he argues, the "force actually used in restraining and removing Hooser from the property was in fact only force, not deadly force."
In the kidnapping statute, " 'abduct' means to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." Laster v. State, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009) (citing TEX. PENAL CODE ANN. § 20.01(2) ). " 'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." Noblett v. State, No. 07-14-00412-CR, 2015 WL 5766512, 2015 Tex. App. LEXIS 10265 (Tex. App.-Amarillo Sept. 30, 2015) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. § 20.01(1) ). Restraint is "without consent" if "accomplished by force, intimidation, or deception." Id. (citing TEX. PENAL CODE ANN. § 20.01(1)(A) ).
In reviewing the sufficiency of the evidence to support a conviction, an appellate court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; Brooks v. State , 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We make this determination by comparing the elements of the crime as defined by a hypothetically correct jury charge to the evidence produced at trial. Thomas v. State, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). We defer to the jury's determinations as to weight and credibility of the evidence and witnesses presented because the jury is the sole judge of both. Noblett, 2015 WL 5766512, at *3, 2015 Tex. App. LEXIS 10265, at *8 (citing Watson v. State , 204 S.W.3d 404, 448-50 (Tex. Crim. App. 2006) ).
Appellant's briefing of his evidentiary-sufficiency issue contains two arguments. First he asserts the evidence does not support the jury's rejection of his justification defenses. Second, he argues the evidence of an element of the offense was insufficient. We will begin with the second argument.
Use or Threatened Use of Deadly Force
Appellant's argument focuses on the element of kidnapping relating to deadly force. The element is contained in the definition of the term "abduct," which, as noted, means "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." TEX. PENAL CODE ANN. § 20.01(2). The phrase "using or threatening to use deadly force" does not describe a conduct element. Rather, it describes one of the "two alternative components of the specific intent element." Brimage v. State, 918 S.W.2d 466, 475-76 (Tex. Crim. App. 1994) ; see Laster, 275 S.W.3d at 521 ; State Bar of Tex., TEXAS CRIMINAL PATTERN JURY CHARGES: CRIMES AGAINST PERSONS & PROPERTY : PJC 81.8, 81.9 (2016). As the court explained in Laster, 275 S.W.3d at 521, the term "abduct" thus includes two elements. "First, the defendant must have restrained another, which is the actus reus requirement. Second, the defendant must have had the specific intent *835 to prevent liberation, which is the mens rea requirement." Id. (citations omitted). The use or threat of use of deadly force is a component of the mens rea requirement of the offense, not the actus reus. Brimage, 918 S.W.2d at 476.[5] Accordingly, to prove appellant committed the offense, the State was required to prove appellant moved Hooser from one place to another with the intent to prevent his liberation by using or threatening to use deadly force. Examining the record for evidence appellant possessed such an intent, we find ample evidence.
That appellant possessed the intent to prevent Hooser's liberation could hardly be more clear. He acknowledged before the jury that he "knew going over there" that the men "were going to tie [Hooser] up and carry him out of there." He bought reinforced tape for that purpose. He participated in applying the tape to Hooser's limbs and, when the tape proved insufficient, told Noblett to "get something stronger." After Hooser was beaten, tied up and loaded into appellant's vehicle, appellant drove him toward another part of Amarillo.
Appellant's intent to accomplish the restraint by using or threatening to use deadly force also is clear. In threats intended for Hooser's ears,[6] appellant said Hooser would no longer be breathing if appellant found him. Days before Hooser's kidnapping, appellant told Noblett he would "put a bullet" in Hooser's head. He said he would bring his guns when they found Hooser. He assembled four other men to join him, knowing along the way that one of them had a gun. Indeed, it hardly seems likely that a person of Hooser's nature could be tied up and carried out of the house as appellant anticipated without at least the threat of deadly force.
The intentions toward use of force of other participants also are reflected in the evidence. During his interview by Rolan, appellant acknowledged that, as they subdued Hooser, Burns waved his pistol at Hooser and told him to "quit moving or I'll shoot you." And, during the interview, appellant acknowledged that Crawford threatened Hooser with castration during the men's struggle with him.
We find the evidence of appellant's statements and conduct sufficient to demonstrate beyond a reasonable doubt that he was guilty of moving Hooser from one place to another with the intent to prevent his liberation by using or threatening to use deadly force.
Justification Defenses
We now return to appellant's argument challenging the jury's rejection of his justification defenses. At appellant's request, the trial court instructed the jury on self-defense and gave an instruction quoting Penal Code section 9.04. See TEX. PENAL CODE ANN. §§ 9.04 (threats as justifiable force), 9.31 (self-defense) (West 2018). On appeal, appellant also argues "uncontroverted testimony established that the force used in removing [Hooser]" from the house was justified under the law of defense of a third person and protection of a third person's property. See TEX. PENAL CODE ANN. §§ 9.33 (defense of third person), *836 9.43 (protection of third person's property) (West 2018).
Each of the justifications appellant mentions is a defense to his prosecution. TEX. PENAL CODE ANN. § 2.03 (West 2018). The initial burden to produce evidence of such a defense rests with the defendant. Saxton v. State , 804 S.W.2d 910, 912-13 (Tex. Crim. App. 1991) (comparing burdens of proof of § 2.03 defenses and § 2.04 affirmative defenses); see Zuliani v. State, 97 S.W.3d 589 (Tex. Crim. App. 2003). Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. Saxton, 804 S.W.2d at 913-14. The burden of persuasion does not require the State to produce evidence, but instead requires that the State prove its case beyond a reasonable doubt. Id. at 913. If the fact finder finds the defendant guilty, then it implicitly finds against the defensive theory. Id. at 914.
When the appellate court reviews the sufficiency of the evidence to support the fact finder's rejection of a defensive issue, the court does not focus on whether the State presented evidence that refuted the defendant's evidence, but determines whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense of conviction and also would have found against the defendant on the defensive issue, beyond a reasonable doubt. Saxton , 804 S.W.2d at 914 ; Dearborn v. State, 420 S.W.3d 366, 372-73 (Tex. App.-Houston [14th Dist.] 2014, no pet.).
In his argument appellant mentions other statutory defenses, but his argument appears to focus on the reasonableness of appellant's belief that force was necessary to protect Robin Boyd or her property from Hooser. He points to the evidence that Hooser was a violent felon and had stolen from Boyd, among others; that Boyd wanted Hooser off her property; that Boyd's desire was communicated to appellant; and that the message was "Hooser was at Boyd's property and they could come take care of their business with him so long as they removed him from the property." From this evidence appellant reasons that Boyd's requirement for Hooser's removal from the house, "only makes all the sense in the world." He continues, "Who in their right mind would expect anything other than life-threatening trouble if Hooser, the violent Aryan Brotherhood felon with not just a firearm he was disallowed from possessing due to his felon status, but an illegal sawed-off shotgun, kept at the ready across his chest while he slept, were to be given up and then allowed to remain on the premises."[7]
The record reveals any number of reasons why the jury could have chosen to reject appellant's contention the forcible removal of Hooser from Boyd's house was justified. First, the evidence of Boyd's desire for Hooser's removal from her house was hardly compelling. Boyd did not testify, and the only witness who testified she discussed the subject directly with Boyd was Anna Atkins. Atkins, an acquaintance of Boyd's, testified that she was present at the house on the day of the events. Asked if she had a "discussion with Ms. Boyd about Mr. Hooser," she replied merely, "Whenever I arrived over there, she had said that he [Hooser] was in the room asleep, and she didn't want him over there, I guess." She later was asked, "Did Robin [Boyd] tell you anything about [Hooser]
*837 being back there sleeping or anything, and not to mess with him?" She replied, "No, she really didn't say anything much about it. She just said that he was back there asleep, because we were going to go in the room and we couldn't go back there." She testified she called Melton and told him Hooser was at the house.[8]
From appellant's testimony at trial, the jury could have formed the opinion any concern he possessed for Boyd's welfare was more feigned than genuine.[9] When the jury exercised its role of judging the credibility of witnesses, it could choose to believe all, some, or none of the testimony of a particular witness. Denman v. State , 193 S.W.3d 129, 132 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd). Provided the opportunity to express his justification for his participation in the attack on Hooser, appellant repeatedly, and candidly, told the jury he went to the house to retrieve his pistol. His testimony of his actions immediately on arriving at Boyd's house is telling:
Q: When you got over to [Boyd's house,] what happened?
A: We walked inside. [Hooser] was in the bedroom. [Melton] grabbed ahold of him. I started asking him where my pistol was. He said it was at his grandmother's house.
Q: Okay. So when you say [Melton] grabbed him, how did [Melton] grab him?
A: By the shoulders, and then took a chain and put [sic ] around his neck.
Q: What was [Hooser] doing during this time?
A: Fighting.
Further, in none of the references to Boyd's fear of Hooser for herself or her property is there evidence that appellant believed his intervention was immediately necessary to protect Boyd or her property, or that such a belief would have been reasonable. See TEX. PENAL CODE ANN. § 9.33(2) (requiring, for defense of third person, proof the actor "reasonably believes that his intervention is immediately necessary to protect the third person"); § 9.43 (person justified in using force to protect property of third person if, under circumstances as he reasonably believes them to be, actor would be justified under § 9.41 or § 9.42); §§ 9.41, 9.42 (providing justification "when and to the degree" actor reasonably believes force or deadly force "is immediately necessary"); Henley v. State , 493 S.W.3d 77, 89-90 (Tex. Crim. App. 2016) (in context of self-defense and defense of third person, "immediately necessary" force is 'that needed at that moment-'when a split second decision is required.' ") (citation omitted). Before his arrival at Boyd's house, appellant took the time to pick up Melton and Burns, and the time to stop at AutoZone for reinforced tape. Appellant also acknowledged that calling the police would have been an option to get Hooser out of Boyd's house if that is what she wanted.
For all these reasons, we conclude the evidence appellant's restraint of Hooser was accompanied by an intent to use or threaten to use deadly force was sufficient, and that the evidence permitted a rational jury to reject appellant's justification defenses. His first issue is overruled.
Denial of Requested Instruction to the Jury
Among the justification defenses that appellant requested the trial court to *838 include in the charge was that of defense of a third person's property. As noted, the trial court instructed the jury on self-defense and "threats as justifiable force"; it denied, however, appellant's requested instruction on defense of a third person's property. Appellant's second issue contends the court erred by doing so.
A defendant is entitled to an instruction on any defensive issue raised by the evidence if: (1) the defendant timely requests an instruction on that specific theory and (2) the evidence raises that issue. Evans v. State, No. 07-14-00145-CR, 2015 WL 1316263, at *2, 2015 Tex. App. LEXIS 2724, at *6 (Tex. App.-Amarillo Mar. 23, 2015, pet. ref'd) (citing Rogers v. State, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003) ). A defendant is entitled to an instruction on every defensive issue raised regardless whether the evidence is strong, feeble, unimpeached or contradicted, and even when the trial court thinks the testimony is not worthy of belief. Id. (citing Walters v. State, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007) ). This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. Id. (citations omitted). If the defendant "adduces evidence, regardless of source and strength, raising every element of the defense, then the burden shifts to the State to disprove the defense beyond a reasonable doubt." Stefanoff v. State , 78 S.W.3d 496, 500 (Tex. App.-Austin 2002, pet. ref'd) (citing TEX. PENAL CODE ANN. § 2.03(d) ; Thomas v. State, 678 S.W.2d 82, 84 (Tex. Crim. App. 1984) ). See also Staples v. State, No. 12-13-00126-CR, 2014 WL 4637966, 2014 Tex. App. LEXIS 10445, (Tex. App.-Tyler Sept. 17, 2014, pet. ref'd) (mem. op., not designated for publication) (citing Stefanoff and noting same).
To determine whether a defensive issue has evidentiary support, we review the record in the light most favorable to the defendant. Evans, 2015 WL 1316263, at *3, 2015 Tex. App. LEXIS 2724, at *6-7 (citing Bufkin v. State, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006) ). A defendant's testimony alone is sufficient to raise a defensive issue. Id. (citing Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987) (op. on reh'g)). "In analyzing whether a defendant was entitled to an instruction, the issue is not the truth or credibility of the defendant's testimony; the issue is whether the jury should have been instructed to decide those questions under the applicable law." Id. (citation omitted).
Section 9.43 of the Penal Code defines the defensive theory of defense of a third person's property. Wilcut v. State, No. 04-14-00737-CR, 2015 WL 2124531, at *2, 2015 Tex. App. LEXIS 4572, at *6 (Tex. App-San Antonio May 6, 2015, no pet.) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. § 9.43 ). Under section 9.43, a person is justified in using force against another to protect land or tangible, movable property of a third person if, under the circumstances as he reasonably believes them to be, the actor would be justified under section 9.41 or 9.42 in using force or deadly force to protect his own land or property and the actor reasonably believes that the third person has requested his protection of the land or property. Atkinson v. State , No. 02-05-445-CR, 2007 WL 529927, at *2-3, 2007 Tex. App. LEXIS 1348, at *5-7 (Tex. App.-Fort Worth Feb. 22, 2007, no pet.) (mem. op., not designated for publication) (citing TEX. PENAL CODE ANN. §§ 9.41(a), 9.43. Section 9.41(a) provides: "A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful *839 interference with the property." TEX. PENAL CODE ANN. § 9.41(a).
As we have noted in our discussion of appellant's first issue, nothing in the record shows appellant's participation in the restraint, beating and kidnapping was "immediately necessary" to effectuate Hooser's removal from the residence as Boyd apparently wanted. Testimony showed Hooser was asleep and then restrained by several men. Nothing in that evidence shows a "split second decision" was required "without time to consider the law" to defend against any action by Hooser. Henley, 493 S.W.3d at 89-90 ; Atkinson, 2007 WL 529927, at *2, 2007 Tex. App. LEXIS 1348, at *6 ). Because that element of the justification defense lacked any evidentiary support, the court did not err in refusing the requested instruction.
We overrule appellant's second issue.
Conclusion
Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

See Tex. Penal Code Ann. § 20.04(a)(5) (West 2018).

At trial, the wire sometimes was referred to as "speaker wire."

The men's plans for Hooser's ultimate disposition are not clear from the evidence. As appellant described it in his testimony, Melton "just said that he [Melton] was going to load [Hooser] in the car and I was going to drive him across Amarillo Boulevard and let him out." Burns, as it developed, shot Hooser to death before they reached Amarillo Boulevard.

See Tex. Penal Code Ann. §§ 7.01 (parties to offenses); 7.02 (criminal responsibility for conduct of another) (West 2018); Gross v. State , 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) ; King v. State, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000) (both discussing law of parties). Appellant does not contend on appeal that he cannot be held guilty under the law of parties. Another of the participants, Jeffrey Noblett, made such an argument in the appeal of his conviction. We rejected his challenge to the inclusion of the parties instruction in the court's charge in his trial. Noblett v. State, No. 07-14-00412-CR, 2015 WL 5766512, 2015 Tex. App. LEXIS 10265 (Tex. App.-Amarillo Sept. 30, 2015) (mem. op., not designated for publication). Noblett filed an application for a writ of habeas corpus. The Court of Criminal Appeals ordered the trial court to conduct further proceedings. Ex parte Noblett, No. WR-87,594-01, 2017 WL 6031743, 2017 Tex. Crim. App. Unpub. LEXIS 846 (Tex. Crim. App. 2017).

Thus, to prove an abduction, "the State must prove that a restraint was completed and that the actor evidenced a specific intent to prevent liberation by either secretion or deadly force." Brimage, 918 S.W.2d at 476.

During his interview, appellant admitted he left voicemail messages for Hooser on the girlfriend's cellphone because he did not have Hooser's number. One message says, "If you could give [Hooser] a message for me ...". Two of the messages say "this is for [Hooser]." Rolan testified the girlfriend said she conveyed the messages to Hooser.

There was evidence Hooser was known to hold his shotgun across his chest while he slept.

Atkins said she called a man named Michael, but she also identified him as "Shaggy," a nickname other witnesses attributed to Melton.

Elsewhere appellant made the statement that Boyd "was afraid ... he had already stolen some stuff from her and her son and wouldn't leave and threatened her."