

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00010-CR

BRITTIN ROBINSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2017-413,306, Honorable John J. "Trey" McClendon III, Presiding

January 25, 2019

OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellant Brittin Robinson was convicted of the offense of aggravated kidnapping[1] and sentenced to an eight-year term of imprisonment.[2] He appeals, challenging the sufficiency of the evidence presented to support his conviction. Appellant and the State

---

[1] TEX. PENAL CODE ANN. § 20.04(b) (West 2018).

[2] This is a first-degree felony offense punishable by a term of imprisonment for life or for any term of not more than 99 years or less than 5 years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (West 2018).

agree the trial court's judgment contains a clerical error. We will reform the judgment and affirm it as reformed.

## Background

Appellant was charged by an indictment stating he "intentionally or knowingly abduct[ed] Samantha Krueger and used or exhibited a deadly weapon, to wit: a hand or knife."

At trial before a jury, Krueger testified that she and appellant had dated, and she went to his apartment on a Thursday in early November 2016. She took some cocaine with her, and the two used the cocaine together and had consensual sex. Krueger voluntarily stayed at the apartment through Saturday. On that day, she decided she needed to leave to care for her cat.

However, before she was able to leave, appellant hid her cell phone. He saw a male friend of hers had called, became angry, and yelled at her. When she tried to run to the front door, appellant "grabbed" her by the hair and "dragged" her back to the bedroom, screaming at her, "You're not leaving." Krueger testified she screamed, "Let me go," and appellant turned loose of her hair. A neighbor came to the front door asking about the screaming she heard. The neighbor testified appellant told her to "mind [her] own business" and slammed the door. Krueger hid in a closet because she was "scared" and did not want appellant to hurt the neighbor.

Appellant then used rope[3] to tie Krueger's hands and feet together in front of her as she lay on her back on the bed. By this time, he had removed her shorts and panties. She told the jury the rope was "tight," and she could not get free. She testified appellant told her, "Just listen to me. Listen to me . . . . If I can't have you, no one else can." Krueger tried to leave but could not.

Appellant then sexually assaulted Krueger as she screamed at him to "[j]ust stop." After several acts of sexual assault, appellant untied Krueger but then began to choke her with both hands, telling her he was going to kill her. Krueger again testified appellant said, "if he can't have me, no one else can . . . ." As appellant choked her, Krueger agreed, she was in fear of her life, could not breathe, and lost consciousness. She told the jury "everything just went black."

When she regained consciousness, appellant was "dragging" her by the hair into the bathroom because she had urinated on his bed. Appellant threw her into a bathtub of water, began "banging [her] head on the tub" and "kept putting her head underwater." Krueger recalled also that appellant returned from his bedroom with a "multi colored pocket knife"[4] and a clean shirt for her. Appellant "waved" the knife "in front of [her]" in what she perceived to be a threat. He threw the shirt at her and she left the tub and put the shirt on. She said appellant laid on the bathroom floor and tried to "cut his throat" with the pocket knife.

---

[3] The rope was shown in a photograph admitted into evidence.

[4] A responding officer looked for the knife "very briefly" but did not locate it.

3

Krueger testified she found her phone and sent text messages to a friend asking for help. When the friend responded, "[w]e're coming," Krueger sent another message asking her friend to hurry, saying appellant was "trying to kill" her. Krueger said she "thought about running" but "couldn't" because she did not have a car, "half of her clothes were gone, and [she] was scared [appellant] was going to push [her] down the stairs." She did not feel she could get away "in time."

Through the bedroom window, Krueger saw her friends arrive. She knocked on the bedroom window. Appellant pushed her away, closed the blinds, and choked her again. She testified she felt like she was "going to die."

When appellant denied Krueger's friends entry into the apartment, they broke through the door, wrapped her in a blanket, and took her downstairs until police arrived. Krueger spoke with police and later went to the hospital with her mother. A nurse testified she saw "petechiae" which "are very small red pinpoint areas of redness" in Krueger's eyes, indicating strangulation occurred. The nurse also expressed her opinion that appellant's hands constituted a deadly weapon as defined by the statute.

Krueger's friends testified that appellant slammed the door and locked it when they arrived at the apartment. After they entered, appellant was violent so two of Krueger's male friends held him until police arrived. He was arrested for unlawful restraint. One of the friends testified appellant repeatedly said, "Please let me go. Please let me go so I can just kill myself." The friends saw Krueger was "absolutely terrified," "fearful for her life," teary-eyed and bruised.

4

The jury also heard recordings of 911 calls and saw a police body-cam video showing police speaking with appellant.

Analysis

To prove appellant committed the offense of aggravated kidnapping, the State was required to prove appellant intentionally or knowingly abducted Krueger and used or exhibited a deadly weapon. TEX. PENAL CODE ANN. § 20.04(b). "Abduct" means to "restrain a person with intent to prevent [her] liberation by: (A) secreting or holding [her] in a place where [s]he is not likely to be found; or (B) using or threatening to use deadly force." TEX. PENAL CODE ANN. § 20.01(2). "Restrain" means to "restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." TEX. PENAL CODE ANN. § 20.01(1). Restraint is "without consent" if it is accomplished by force, intimidation, or deception. TEX. PENAL CODE ANN. § 20.01(1)(A).

As the Court of Criminal Appeals has summarized the elements of the offense of kidnapping, the State must prove "1) a restraint made 2) with a specific intent to prevent liberation by either of two particular means." *Brimage v. State,* 918 S.W.2d 433, 475-76 (Tex. Crim. App. 1994). Appellant's argument appears to challenge the evidence supporting both the restraint and specific intent elements. The State argues it proved appellant restrained Krueger with the specific intent to prevent her liberation by using or threatening to use deadly force. Our review of the record leads us to agree with the State.

We review the sufficiency of the evidence by considering all of the evidence before the jury in the light most favorable to the jury's verdict to determine whether "any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We give deference to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

The factfinder is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("The factfinder exclusively determines the weight and credibility of the evidence."). We defer to the factfinder's determinations of credibility and may not substitute our judgment for that of the factfinder. *Jackson,* 443 U.S. at 319; *Thornton v. State,* 425 S.W.3d 289, 303 (Tex. Crim. App. 2014). When there is conflicting evidence, we must presume the factfinder resolved the conflict in favor of the verdict and defer to that resolution. *Jackson,* 443 U.S. at 326; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016).

With regard to the restraint element, appellant argues that Krueger's testimony shows she voluntarily stayed at appellant's apartment for two days and nights, and chose not to leave on multiple occasions. The argument misapplies the law regarding restraint by confinement. Confinement is not defined by the Penal Code. We therefore use its common meaning when reviewing the evidence. *Holmes v. State,* 873 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no pet.) (citation omitted). To confine means "to shut up,

6

imprison, immure, put or keep in detention, to relegate to certain limits." *Id.* (citing OXFORD ENGLISH DICTIONARY 805-06 (24th ed. 1983)).

Krueger's initial voluntary arrival and stay at appellant's apartment do not render the evidence insufficient to prove restraint by confinement. *See King v. State,* 29 S.W.3d 556, 563-64 (Tex. Crim. App. 2000) (rejecting the argument that no kidnapping occurred because the victim "went along voluntarily" and stating "whether [the victim] voluntarily accepted a ride with appellant . . . earlier that night is irrelevant."); *Reyes v. State,* 491 S.W.3d 36, 45-46 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (acknowledging that "the fact that a victim initially accompanies her assailants voluntarily" does not preclude a finding the defendant kidnapped the victim) (citations omitted); *Guerra v. State,* Nos. 05-14-00086-CR, 05-14-00087-CR, 2015 Tex. App. LEXIS 5843, at *17-18 (Tex. App.—Dallas June 10, 2015, pet. ref'd) (mem. op., not designated for publication) (finding evidence sufficient to show abduction and restraint, noting that while the victim entered the defendant's home voluntarily, the defendant took steps to prevent her from leaving the house once she was there); *Crews v. State,* No. 06-09-00080-CR, 2009 Tex. App. LEXIS 9677, at * 11-12 (Tex. App.—December 22, 2009, pet. ref'd) (mem. op., not designated for publication) (finding evidence sufficient to support restraint when evidence showed that, despite the victim's willing accompaniment with the defendant, the defendant restricted the victim's movements and restrained her liberty by use of threats of physical force and exhibition of a deadly handgun).

And the law does not require any minimum length of time for which the victim must be restrained. *Santellan v. State,* 939 S.W.2d 155, 163 (Tex. Crim. App. 1997). *See also, e.g., Guerra v. State*, No. 13-01-451-CR, 2002 Tex. App. LEXIS 4651, at *3-4 (Tex.

7

App.—Corpus Christi June 27, 2002, no pet.) (mem. op., not designated for publication) (finding evidence sufficient to support aggravated kidnapping when evidence showed that the defendant confined the victim to the bedroom by holding her feet for less than two minutes). Krueger's testimony, if believed, amply demonstrated that appellant restrained her by confining her. When she tried to leave his apartment, he dragged her to the bedroom and, after the neighbor responded to her screams, tied her with rope, preventing her release and thus substantially restricting her liberty. After he choked and sexually assaulted her, appellant further restrained her liberty by holding her in the bathtub.

But to demonstrate appellant's guilt, the State was required to prove his restraint of Krueger (the actus reus) was accompanied by the specific intent to prevent her liberation by secreting or holding her in a place where she was not likely to be found; or by using or threatening to use deadly force (mens rea). *See Young v. State,* 542 S.W.3d 830, 834-35 (Tex. App.—Amarillo 2018, pet. ref'd) (citing *Brimage*, 918 S.W.2d at 476) (discussing actus reus and mens rea of the offense).

The State contends its proof was adequate to show appellant's specific intent through either means. Because we find ample evidence that appellant had the intent to prevent Krueger's liberation by using or threatening to use deadly force, we do not address the alternative "secreting or holding" component of the specific intent element.

The phrase "using or threatening to use deadly force" does not describe a conduct element but is, instead, a description of the "two alternative components of the specific intent element." *Young,* 542 S.W.3d at 834 (citing *Brimage*, 918 S.W.2d at 475-76; *Laster*

8

*v. State,* 275 S.W.3d 512, 521 (Tex. Crim. App. 2009); State Bar of Texas, TEXAS CRIMINAL PATTERN JURY CHARGES: CRIMES AGAINST PERSONS & PROPERTY: PJC 81.8, 81.9 (2016)).

Appellant partially undressed Krueger, tied her with rope, sexually assaulted her and threatened her life. When he untied her, he straddled and choked her, again making threats. He choked her with enough force to cause her to be unable to breathe and to lose consciousness. Krueger testified she was afraid for her life. The nurse testified appellant's actions constituted strangulation and that appellant's hands constituted a deadly weapon under the statute. The nurse also said the fact Krueger urinated as appellant was choking her indicated a loss of consciousness.

We find the evidence sufficient to prove appellant abducted Krueger. *Young,* 542 S.W.3d at 834-35.

Nevertheless, appellant points out facts he believes render the State's evidence insufficient. Appellant points to the nurse's testimony that choking can be a sexual fetish and argues that the State's evidence that he used or threatened to use deadly force was not sufficient to overcome the possibility that the choking was simply part of consensual sex between himself and Krueger. However, Krueger testified the choking was not consensual and that she feared for her life. The jury was free to believe Krueger's testimony. *Chambers,* 805 S.W.2d at 461; *Wise,* 364 S.W.3d at 903.

Viewing the evidence in the requisite light, we find a reasonable jury could have found, beyond reasonable doubt, the evidence sufficient to support appellant's conviction for aggravated kidnapping. We resolve appellant's sole issue against him.

9

As the parties note, the trial court's judgment included in the clerk's record contains a clerical error. The "Offense for Which Defendant Convicted" in the summary section of the judgment reads "Aggravated Kidnapping Facilitate" and the "Statute for Offense" section in the same portion of the judgment reflects appellant was convicted under Texas Penal Code § 20.04(a)(3). That section provides that a person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to facilitate the commission of a felony or the flight after the attempt or commission of a felony. TEX. PENAL CODE ANN. § 20.04(a)(3). The record before us makes it clear appellant was convicted under Texas Penal Code § 20.04(b), providing that a person commits an offense if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense. TEX. PENAL CODE ANN. § 20.04(b). Accordingly, under "Statute for Offense," the judgment should reflect "§ 20.04(b)" rather than "20.04(a)(3)" and under "Offense for Which Defendant Convicted" the judgment should read "Aggravated Kidnapping" rather than "Aggravated Kidnapping Facilitate."

We have the authority to reform the judgment of the court below to make the record speak the truth when we have the information necessary to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State,* 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State,* 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

10

Conclusion

Having overruled appellant's sole issue on appeal, we reform the trial court's judgment to correct the statute of conviction and, as reformed, affirm the trial court's judgment.

James T. Campbell
Justice

Publish.